**TEXAS DEPARTMENT OF TRANSPORTATION,**
Appellant,

v.

**Leonard ABILEZ and Wife, Judy Abilez, and Sharon Thayer and Richard Thayer, Individually and as The Representatives of The Estates of April Abilez and Traci Thayer, Respectively, Appellees.**

No. 10–96–252–CV.

Court of Appeals of Texas, Waco.

Feb. 4, 1998.

Rehearing Overruled March 11, 1998.

Alan L. Grundy, Asst. Atty. Gen., Transp. Div., Austin, for appellees.

Timothy F. Lee, Ware, Snow, Fogel, Jackson & Greene, Houston, Roger Knight, Jr., Roger Knight, Jr., Inc., Madisonville, for appellees.

Before DAVIS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

In December 1994, April Abilez and Traci Thayer drowned in Mustang Creek after their car, driven by Abilez, left Farm to Market Road 978 in Madison County during heavy rains. The women's parents ("Appellees") brought a premises liability suit against the Texas Department of Transportation (TxDOT) asserting that the women were not warned of the dangerous condition of FM 978 and that the high water swept or forced the car off the road into the creek. The jury found both TxDOT and Abilez negligent, apportioning 90% of the negligence to TxDOT. TxDOT appeals on six points, complaining of the sufficiency of the evidence and the jury charge. We will affirm the judgment.

## BACKGROUND

It is undisputed that Madison County received extraordinary amounts of rain beginning on December 15, 1994.[1] Flash flood warnings were issued by the National Weather Service at 7:54 p.m. and again at 10:45 p.m. As roadways began to flood, TxDOT personnel traveled the county inspecting the roads. Eventually eight roadways were closed due to flooding. FM 978 was closed shortly after 2 a.m. Both sides agree that the exact condition of FM 978 and the exact time of the accident are unknown.

April and Traci were last seen alive around 11:45 p.m. that night in Franklin, about 35 miles from Madisonville. It appears that they would have been traveling eastbound on FM 978, going toward Madisonville. They were reported missing the following day. On December 22, the car with their bodies was found in Mustang Creek approximately 1,000 feet downstream from FM 978. Given the time they were last seen alive, the accident may have occurred around 12:15 a.m. on December 16.[2]

## SUFFICIENCY OF THE EVIDENCE

In its first three points, TxDOT asserts sufficiency points concerning the court's charge on the special defect premises liability theory, whether the water over the road was a special defect, and proximate cause. At oral argument, TxDOT conceded that these points are not sustainable. Thus, we overrule points one through three.

TxDOT's remaining points focus on (a) whether the evidence is legally and factually sufficient to support the jury's finding that TxDOT was negligent by failing to warn of the roadway condition, and (b) whether the court's charge erroneously stated the duty owed in a special defects case.

---

1. Over five inches of rain fell between 8 a.m. on December 15 and 8 a.m. on December 16.

2. Harvey Villareal testified that he saw the women in Franklin at 11:35 p.m. He testified that the drive takes approximately forty-five minutes, which would place them at Mustang Creek about 12:15 a.m. No other testimony established the time they arrived at that location.

## FAILURE TO WARN

TxDOT's fourth point asserts that there is no evidence or insufficient evidence to support the jury's finding that it was negligent by failing to adequately warn the decedents of the condition of the roadway. In conducting a no-evidence review, we look at the evidence and inferences supporting the jury's finding and disregard evidence and inferences to the contrary. *Texarkana Memorial Hosp., Inc. v. Murdock,* 946 S.W.2d 836, 838 (Tex.1997). If there is more than a scintilla of evidence supporting the finding, the no-evidence challenge fails. *Id.* In conducting an insufficient-evidence review, we look at all of the evidence to determine if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

Doug Holland, a TxDOT employee, testified that he was called out to work the evening of December 15 because of high water. He went to FM 978 around 9:15 to 9:45 p.m. and found four inches of water on the road over Mustang Creek. He estimated that about 100 feet of roadway was under water. He put two reflective cones about 150–200 feet from the water's edge near the Campbell house on the eastern end of FM 978. He drove through the water to the other side of Mustang Creek and put two reflective cones on the centerline by the Morgan house.

Holland returned to the Campbell house and dropped a fold-down "WATER OVER ROAD" sign and placed a cone with a flashing light and flag by it. He found that the cones he had previously placed in the road had been "hit" or "moved." He could not say whether the cones had been knocked over or washed away. Holland reset the cones and then drove west to the Venable house near the intersection of FM 978 and FM 2289.[3] He dropped another fold-down "WATER OVER ROAD" sign near the intersection and placed a reflective cone and flashing light at its base.

Holland stated that he began assembling barricades for FM 978 around 11 p.m.

Those barricades were loaded into a trailer, but were diverted to State Highway 21 because of flooding there. Around 1:15 a.m., after assembling additional barricades, Holland barricaded the eastern end of FM 978 near the Campbell house. He testified that he did not drive across the bridges to barricade the other end because he did not consider it safe. Instead, he drove another route and barricaded the western end of FM 978 at the 2289 intersection. He placed the latter barricade around 2:10 a.m., effectively closing FM 978.

TxDOT employee Gary Flowers testified that he was called out at 7 p.m. He went to the TxDOT barn around 8 or 9 p.m. He and Holland prepared barricades for FM 978 around 10:30 p.m., but the barricades were diverted for use on State Highway 21.

Billy Easterling, another TxDOT employee, testified that he was called to work around 10 p.m. He arrived around 10:30 p.m. and found Holland and Flowers working on barricades. Easterling went to other locations, but was called back to the TxDOT barn around 12:15 a.m. and sent to FM 978. He arrived at the Campbell house around 1:30 a.m. and found the "WATER OVER ROAD" sign with a cone beside it. He went down the hill near the Campbell house and encountered "more water than he had ever seen" there. Easterling saw two of the reflective cones Holland had put out earlier. One was in the road and one had been "knocked to the side a little bit." He got out of his vehicle and flagged traffic until the barricades arrived. One eastbound pickup came through. Easterling stopped the vehicle and—because he thought it was dangerous—told the occupants not to come back through. He said that no one was flagging eastbound cars at the Venable house.

Sheila Patterson testified that she was westbound on FM 978 around 4:30 p.m. on December 15. She encountered water over the road at Mustang Creek. She and her husband drove eastbound through the area around 7:30 p.m. and again encountered water on the road.

**3.** The intersection is approximately 5 miles west of the bridges over Mustang Creek.

Patricia Allen testified that "extraordinarily hard rainfall" occurred that evening. She and her husband were returning home to Normangee from Madisonville around 10 or 10:30 p.m. She was driving westbound on FM 978 when she encountered high water over Mustang Creek. Allen testified that there may have been a warning sign, but she did not see it. She did see one orange cone "sloshing" or "bobbing" in the water on the road. She and her husband crossed the bridge, but were afraid water would come in through the car doors. They made it across the bridge without water coming into the car. She estimated that water was over the road for about 100 yards. Allen did not notice if there was a sign for eastbound traffic at the FM 2289 intersection.

Ronald Hudson testified that he was westbound on FM 978 around 10 or 10:30 p.m. in his 3/4–ton pickup. He testified that water was totally across the road, that he had difficulty controlling the truck, and that he was frightened as he drove through the water. Hudson testified that he did not see any warning signs or cones.

TxDOT argues that Holland's testimony that he dropped "WATER OVER ROAD" signs and placed reflective cones by the Venable house at 9:45 p.m. conclusively proves that TxDOT warned drivers of the hazard. It argues that there is no evidence to dispute that these signs, cones, and lights did not warn the decedents. Appellees argue that the jury could have disbelieved Holland's testimony, and that even if these warning items were in place, they were not adequate given the severity of the flooding hazard. They emphasize that the "WATER OVER ROAD" signs gave no indication of the depth or extent of the water.

Holland testified that he dropped the signs and placed the cones on both ends of the water hazard between 9:15 and 9:45 p.m. Within the hour, two different witnesses drove westbound through the area and encountered high water. Neither Hudson nor Allen saw any warning signs. Allen saw one cone bobbing in the water on the road.

TxDOT argues that because both Hudson and Allen were westbound their testimony that they saw no warning signs or cones does not impact whether the eastbound decedents were warned. It asserts that there is no evidence that the decedents did not see the warning signs at the intersection of FM 2289 and 978.

Although Holland had placed several cones and dropped the "WATER OVER ROAD" sign for westbound traffic, Hudson saw none of these warning items and Allen only saw one cone. The jury could believe that eastbound traffic would likewise not have seen the sign and cones. Further, the jury could have believed that, even if the "WATER OVER ROAD" sign and cones were visible, they were inadequate to warn the decedents of the severity of the hazard that lay before them.

Based on this analysis, we believe that the evidence is legally and factually sufficient to support the jury's finding that TxDOT was negligent by failing to adequately warn the victims of the condition of the roadway. *Murdock*, 946 S.W.2d at 838; *Cain*, 709 S.W.2d at 176.

We overrule point four.

## CHARGE ON SPECIAL DEFECT

TxDOT's fifth point asserts that the court incorrectly instructed the jury on the duty it owed because of a special defect. Its sixth point asserts that the court erred in giving two separate instructions on TxDOT's negligence.

### DUTY OWED

The Texas Tort Claims Act creates governmental liability for injuries caused by a condition of real property if the governmental unit would, were it a private person, be liable under Texas law. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 1997). The standard of care owed is determined by whether the defect is an ordinary premise defect or a special defect. *Id.* § 101.022 (Vernon 1997); *City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex.1997) (per curiam). Thus:

■ 1. If the condition is an ordinary premise defect, the duty owed by the governmental entity is the same duty a private landowner owes a licensee—not to injure the

plaintiff through willful, wanton, or grossly negligent conduct. *Roberts,* 946 S.W.2d at 843.

■ 2. An exception to this rule is that, if the governmental entity has knowledge of the dangerous condition and the plaintiff does not, the entity has a duty either to warn the plaintiff or to make the condition reasonably safe. *Id.*

■ 3. On the other hand, if the condition is a special defect, the duty owed by the governmental entity is the same duty a private landowner owes to an invitee—to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a condition of the premises of which the entity is or reasonably should be aware. *Id.*

JURY CHARGE GENERALLY

■ It follows that the jury charge in a governmental entity case depends on whether the plaintiff claims to have been injured by (1) an ordinary premise defect, (2) an ordinary premise defect the entity knows of and the plaintiff does not, or (3) a special defect.[4]

In *State Dep't of Highways v. Payne,* the Supreme Court found that the culvert in question was not a special defect because it was far enough from the paved surface that users of the roadway were not likely to encounter it. *State Dep't of Highways v. Payne,* 838 S.W.2d 235, 239 (Tex.1992). Before reaching that conclusion, however, the Court set out the elements a plaintiff must prove in a special defect case, following an invitee analogy. *Id.* at 237.

■ To establish liability, an invitee must prove:

1. a condition of the premises created an unreasonable risk of harm to the invitee;

2. the owner knew or reasonably should have known of the condition;

3. the owner failed to exercise ordinary care to protect the invitee from danger;

4. the owner's failure was a proximate cause of the injury.

*Id.* The lower court's charge had instructed the jury that the duty owed could be discharged by either warning of the dangerous condition or making the dangerous condition reasonably safe. *Id.* at 238.

JURY CHARGE GIVEN

■ TxDOT concedes that this is a special defect case. Thus, it owed the victims the same duty a private land owner owes to an invitee—to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which it was or reasonably should have been aware. *Id.* at 237.

The trial court, among its general definitions, defined negligence as:

"Negligence," when used with respect to the conduct of [TxDOT], means *failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a condition on F.M. 978 in the area of Mustang Creek* that [TxDOT] knew about or in the exercise of ordinary care should have known about.[5]

(Emphasis added.) Just before Question No. 1, the court instructed the jury that TxDOT was negligent if:

(a) The condition posed an unreasonable risk of harm, and

(b) [TxDOT] knew about or in the exercise of ordinary care should have known about the condition, and

(c) [TxDOT] **failed to exercise ordinary care to protect** [the decedents] from danger.

"Negligence," when used with respect to the conduct of [defendant] as an owner or occupier of a premises, means *failure to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition* that the owner or occupier knows about or in the exercise of ordinary care should know about. TEXAS PATTERN JURY CHARGES PJC 65.1 (1997) (emphasis added).

---

4. Even though used as a guide in governmental entity cases, the Pattern Jury Charges are based on non-governmental cases where the charge to be given depends on the plaintiff's status as a licensee or invitee.

5. The court followed the Pattern Jury Charge which defines negligence in a premises cases where the plaintiff is an invitee as:

(Emphasis added). The court then asked the jury:

> Did the negligence, if any, of those named below proximately cause the occurrence in question?

This definition, instruction, and question—taken together—covered all the requirements of *Payne*. *Id.* at 237–38.

THE DISPUTE

TxDOT objected to the charge as being an improper and overly broad statement of the duty it owed to the decedents. It requested the following instruction, in lieu of that quoted above:

> a. The water present on Farm to Market Road 978 at the time and place of the accident posed an unreasonable risk of harm to a person exercising ordinary care, and
>
> b. [TxDOT], in the exercise of ordinary care, knew or should have known of the unreasonable risk of harm, and
>
> c. [TxDOT] **failed to adequately warn** April Abilez of the condition **and failed to make that condition reasonably safe**, and
>
> d. The condition was the proximate cause of the injuries to [decedents].

(Emphasis added). The court refused the request.

TxDOT asserts that *Payne* makes clear that the duty to protect is discharged if the governmental entity uses ordinary care to "reduce or eliminate an unreasonable risk of harm." *Payne*, 838 S.W.2d at 237. Thus, it says, because the court refused the requested instruction, the charge was overly broad and allowed the jury to believe the only way TxDOT could have discharged its duty was to barricade the road. To support its position, it points to *State v. Williams*, 940 S.W.2d 583 (Tex.1996) (per curiam).

RECENT DECISIONS

*Williams* was a special defect case decided in 1996 after this case was tried. *Id.* at 585. The trial court in *Williams* had instructed the jury that the State was liable if it failed to warn the plaintiff **or** failed to make the condition reasonably safe. *Id.* at 584. The State argued on appeal that it was not liable unless it failed to both warn **and** to make safe. *Id.* The Supreme Court agreed. In reaching its conclusion, it first set out the "proper instruction" in a premises liability case concerning an ordinary defect where the plaintiff claims the entity had actual knowledge:

> With respect to the condition of the premises, defendant was negligent if—
>
> (a) the condition posed an unreasonable risk of harm;
>
> (b) defendant had actual knowledge of the danger;
>
> (c) plaintiff did not have actual knowledge of the danger; and
>
> (d) defendant failed to exercise ordinary care to protect plaintiff from danger, by *both failing to adequately warn plaintiff of the condition and failing to make that condition reasonably safe*.

*Id.* at 584 (emphasis added). The Court added that, when the plaintiff is an invitee (special defect), paragraph (b) would state "knew or should have known" and paragraph (c) would be omitted. *Id.* at 584–85. No change in paragraph (d) was mentioned.

In the even more recent decision in *City of Grapevine v. Roberts*, however, the Supreme Court retains the differentiation between "adequately warning or making reasonably safe" in an ordinary premise defect case and "reducing or eliminating the unreasonable risk" in a special defect case. *Roberts*, 946 S.W.2d at 843.

APPLICATION TO POINTS

Three related ideas are presented by *Payne* and *Williams:*

1. the governmental entity must protect the plaintiff from danger (*Payne* and *Williams*); and

2. it may do so by reducing or eliminating the unreasonable risk of harm (*Payne* and *Williams*); or

3. it may do so by either providing an adequate warning or making the condition reasonably safe (because it may do either, it must have failed to do both before it can be held negligent) (*Williams*).

*See Williams,* 940 S.W.2d at 584; *Payne,* 838 S.W.2d at 237. The latter two are equivalent only if "reducing the unreasonable risk" equates to "providing an adequate warning" and "eliminating the unreasonable risk" equates to "making the condition reasonably safe." Unless they are, the Supreme Court has given us two different tests to determine if a governmental entity failed to protect against a special defect. Assuming that there is a single test and that the two concepts are equivalent, we find that the court's definition of "negligence" correctly guided the jury under the facts of this case. *Payne,* 838 S.W.2d at 237–38.

The charge, as and when given, was correct. *Id.* If the case were tried today, the court would be required to give the *Williams*-type instruction. *Williams,* 940 S.W.2d at 584–85. Even if we were to say that a different charge should have been given, we would find the failure to do so harmless. Tex.R.App. P. 44.1.

NEW RULE

 The just-repealed rules of appellate procedure provided:

No judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of the opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause rendition of an improper judgment in the case,....

Tex.R.App. P. 81(b)(1) (repealed). The current rule provides:

No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:

(1) probably caused the rendition of an improper judgment,....

Tex.R.App. P. 44.1(a)(1). The revised rule no longer requires that we find both (a) that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause rendition of an improper judgment and (b) that the error probably did cause rendition of an improper

judgment. *Id.* Our inquiry under this part of the rule is now limited to whether the error resulted in an improper judgment.

HARM ANALYSIS

We say any charge error was harmless because it was impossible for TxDOT to eliminate the condition or make it reasonably safe, *i.e.,* TxDOT could not remove the water from the road or reduce the amount of water over the road. Thus, the only question was whether TxDOT adequately reduced the risk of harm presented by the hazardous amount of water over the road. Because the evidence is uncontroverted that the barricades were not in place, the jury could have found that TxDOT had not used ordinary care to adequately reduce the unreasonable risk of harm at the time the victims encountered water over the roadway. As we have shown, this is equivalent to a finding that TxDOT did not provide an adequate warning. In these limited circumstances, we find the failure to add the *Williams*-type language was harmless.

Because we find the charge was either correct or, if incorrect, the error was harmless, we overrule points five and six. We affirm the judgment.