Felicia THOMPSON and Dorothy Nance, Appellants,

v.

CITY OF CORSICANA HOUSING AUTHORITY, Appellee.

No. 10–99–352–CV.

Court of Appeals of Texas, Waco.

Aug. 29, 2001.

**550**

Joe Alfred Izen, Jr., Bellaire, for appellant.

Paul K. Pearce, Jr. and Robert J. Davis, Matthews, Carlton, Stein, Shiels, Pearce, Dunn & Knott, L.L.P., Dallas, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

DAVIS, Chief Justice.

Felicia Thompson and Dorothy Nance sued the City of Corsicana Housing Authority (the "Housing Authority") for personal injuries they allegedly sustained when a portion of the ceiling in Thompson's apartment fell on them. They sued under theories of premises liability and breach of contract. The Housing Authority filed a motion for summary judgment alleging that: (1) it has sovereign immunity; (2) Appellants cannot recover on their premise defect theory because they had actual knowledge of the alleged defective condition and the Housing Authority did not; (3) the summary judgment evidence conclusively establishes that Appellants caused the occurrence in question or were contributorily negligent; and (4) the Tort Claims Act bars Appellants' claim for exemplary damages as a matter of law. The court granted the Housing Authority's motion without specifying the basis for its ruling. Appellants claim in a single point of error that the court erred in granting the summary judgment motion.

## BACKGROUND

According to Appellants' petition, they were sitting in Thompson's living room on January 24, 1995, when the ceiling collapsed on them. They sustained physical injuries and received treatment at the emergency room of a local hospital. They allege causes of action for premises liability and breach of contract. Appellants seek $3,000 in actual damages, $100,000 in exemplary damages, and "at [l]east $1,000" for attorney's fees and costs of court.

The Housing Authority asserts in its summary judgment motion that it has sovereign immunity from all of these claims. Regarding the premise defect claim, the Housing Authority further contends that the summary judgment evidence conclusively establishes that Appellants had actual knowledge of the dangerous condition before the occurrence and the Housing Authority did not. It contends in the alternative under Rule of Civil Procedure 166a(i) that the record contains no evidence that Appellants did not have actual knowledge or that the Housing Authority did.

It further alleges that Appellants' conduct was the sole proximate cause of the occurrence in question or they were contributorily negligent. Alternatively, it asserts that the record contains no evidence that Appellants' conduct was not the sole proximate cause of the occurrence or that Appellants were not contributorily negligent. The Housing Authority concludes its motion by citing section 101.024 of the Tort Claims Act for the proposition that Appellants cannot recover exemplary damages from it as a matter of law.

## SOVEREIGN IMMUNITY

 Sovereign immunity has two components: immunity from suit and immunity from liability. *See Federal Sign v.*

*Texas So. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). Immunity from suit protects government entities and officials from suit. *See Texas Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex.1999) (per curiam). Immunity from liability protects government agencies and officials from judgment even if immunity from suit has been waived. *Id.* Immunity from suit can be waived only by statute or legislative resolution. *See Federal Sign*, 951 S.W.2d at 405.

■■ The Tort Claims Act constitutes a statutory waiver of immunity from suit and from liability under limited circumstances. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.025(a) (Vernon 1997); *Texas Dep't of Mental Health & Mental Retardation v. Pearce*, 16 S.W.3d 456, 459–60 (Tex. App.—Waco 2000, pet. dism'd w.o.j.). If a plaintiff establishes liability under the Tort Claims Act, then section 101.025(a) of the Act waives a governmental unit's immunity from suit. *Id.* A city housing authority is a governmental unit "[f]or all purposes, including the application of the Texas Tort Claims Act." *See* Tex. Loc. Gov.Code Ann. § 392.006 (Vernon 1999).

■ A governmental unit waives its immunity from liability when it contracts with a private citizen. *See Federal Sign*, 951 S.W.2d at 408. "However, a private citizen must have legislative consent to sue the [governmental unit] on a breach of contract claim. The act of contracting does not waive the [governmental unit]'s *immunity from suit." Id.*

## PROPRIETY OF SUMMARY JUDGMENT

Appellants contend in their sole point that the court erred by granting the Housing Authority's summary judgment motion because the summary judgment record conclusively establishes that Thompson paid for the use of the premises, that she reported the defective condition to the Housing Authority, that the Housing Authority failed to repair the ceiling, and that Appellants suffered injury when a portion of the ceiling fell on them. Appellants also allege that the Housing Authority owed a warranty of habitability to Thompson which it breached when it failed to repair the ceiling.

## STANDARD OF REVIEW

■■ We conduct a *de novo* review in a summary judgment case. *See Macias v. Rylander*, 40 S.W.3d 679, 683 (Tex.App.—Austin 2001, pet. denied); *Coleman v. Cintas Sales Corp.*, 40 S.W.3d 544, 547 (Tex. App.—San Antonio 2001, pet. denied); *Rucker v. Bank One, Tex., N.A.*, 36 S.W.3d 649, 653 (Tex.App.—Waco 2000, pet. filed). To prevail on a summary judgment motion, the movant must demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Nixon v. Mr. Prop. Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Fletcher v. Edwards*, 26 S.W.3d 66, 73 (Tex.App.—Waco 2000, pet. denied).

■■ We disregard all conflicts in the evidence and accept the evidence favoring the nonmovant as true. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965); *Fletcher*, 26 S.W.3d at 73. We indulge every reasonable inference from the evidence in favor of the nonmovant and resolve any doubts in its favor. *See American Tobacco*, 951 S.W.2d at 425; *Fletcher*, 26 S.W.3d at 73. "When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion." *Star-Telegram, Inc. v.*

*Doe,* 915 S.W.2d 471, 473 (Tex.1995); *Fletcher,* 26 S.W.3d at 74.

## SOVEREIGN IMMUNITY

When a governmental unit raises the affirmative defense of sovereign immunity in a summary judgment motion, it must establish the affirmative defense as a matter of law. *See Texas River Barges v. City of San Antonio,* 21 S.W.3d 347, 356 (Tex.App.—San Antonio 2000, pet. denied); *City of El Paso v. Hernandez,* 16 S.W.3d 409, 414 (Tex.App.—El Paso 2000, pet. denied); *Ager v. Wichita Gen. Hosp.,* 977 S.W.2d 658, 660 (Tex.App.—Fort Worth 1998, no pet.). Once the movant establishes sovereign immunity as a matter of law, the burden of production shifts to the non-movant to establish a waiver of immunity. *See Medrano v. City of Pearsall,* 989 S.W.2d 141, 144 (Tex.App.—San Antonio 1999, no pet.); *Ager,* 977 S.W.2d at 660; *see also Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989) (burden does not shift to non-movant unless movant establishes defense as matter of law); *Palmer v. Enserch Corp.,* 728 S.W.2d 431, 435 (Tex. App.—Austin 1987, writ ref'd n.r.e.) ("If a movant establishes an affirmative defense . . ., the non-moving party must then adduce summary judgment proof raising a fact issue in avoidance of the affirmative defense, for example, facts which would bring the matter within an exception or defense to the movant's affirmative defense").

Even though the burden of production shifts, the burden of proof remains with the movant to negate any issues raised by the non-movant and conclusively establish its entitlement to summary judgment as a matter of law. *See Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.1975); *Garza v. Williams Bros. Constr. Co.,* 879 S.W.2d 290, 295 (Tex.App.—Houston [14th Dist.] 1994, no writ); *see also Jenkins v.*

*Guardian Indus. Corp.,* 16 S.W.3d 431, 439 (Tex.App.—Waco 2000, pet. denied); *Rios v. Texas Commerce Bancshares, Inc.,* 930 S.W.2d 809, 818 (Tex.App.—Corpus Christi 1996, writ denied).

The parties do not dispute that the Housing Authority is a governmental unit which enjoys sovereign immunity, except in cases in which that immunity has been waived. *See* TEX. LOC. GOV.CODE ANN. § 392.006; *Michael v. Travis County Hous. Auth.,* 995 S.W.2d 909, 912 (Tex. App.—Austin 1999, no pet.). Accordingly, we examine the summary judgment record to determine whether Appellants have produced any evidence that the Housing Authority's immunity has been waived.

## PREMISE DEFECT

Under section 101.022(a) of the Tort Claims Act, a plaintiff in a premise defect case has the status of a licensee "unless the claimant pays for the use of the premises." TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(a) (Vernon 1997); *Texas Parks & Wildlife Dep't v. Davis,* 988 S.W.2d 370, 374 (Tex.App.—Austin 1999, no pet.); *Harris County v. McFerren,* 788 S.W.2d 76, 78 (Tex.App.—Houston [1st Dist.] 1990, writ denied); *Marshbank v. Austin Bridge Co.,* 669 S.W.2d 129, 133 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). If the claimant pays for the use of the premises, then she enjoys the status of an invitee. *See Davis,* 988 S.W.2d at 374; *University of Tex. Med. Branch v. Davidson,* 882 S.W.2d 83, 85 (Tex.App.—Houston [14th Dist.] 1994, no writ); *M.D. Anderson Hosp. & Tumor Inst. v. Felter,* 837 S.W.2d 245, 247 (Tex.App.—Houston [1st Dist.] 1992, no writ).

A plaintiff who is a licensee must establish the following in a premises defect case:

- a condition of the premises posed an unreasonable risk of harm to her;

- the owner had actual knowledge of the defective condition;
- the licensee had no knowledge of the defective condition;
- the owner failed to exercise ordinary care to protect the licensee from danger; and
- such failure was a proximate cause of injury to the licensee.

*State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex.1992) (citing *State v. Tennison*, 509 S.W.2d 560, 561 (Tex.1974)); *accord City of Grapevine v. Roberts*, 946 S.W.2d 841, 843 (Tex.1997); *Davis*, 988 S.W.2d at 374.

 Conversely, a plaintiff who is an invitee must establish that:

- a condition of the premises posed an unreasonable risk of harm to her;
- the owner knew or reasonably should have known of the defective condition;
- the owner failed to exercise ordinary care to protect the invitee from danger; and
- such failure was a proximate cause of injury to the invitee.

*Payne*, 838 S.W.2d at 237 (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex.1983)); *accord Roberts*, 946 S.W.2d at 843; *Davis*, 988 S.W.2d at 374; *Texas Dep't of Transp. v. Abilez*, 962 S.W.2d 246, 251 (Tex.App.—Waco 1998, pet. denied). The primary differences between the elements a licensee must establish and those an invitee must prove are that an invitee need only show that the landowner reasonably should have known of the defect (versus actual knowledge) and the invitee's knowledge of the defect is immaterial. *See State v. Williams*, 940 S.W.2d 583, 584–85 (Tex.1996) (per curiam).

### Felicia Thompson

Thompson states in her summary judgment affidavit that she paid the Housing Authority $25 per month in rent for her apartment. The Housing Authority does not dispute this. Thus, it owed to Thompson the duty that a private landowner owes an invitee. *See Davis*, 988 S.W.2d at 374; *Davidson*, 882 S.W.2d at 85; *Felter*, 837 S.W.2d at 247; *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(a). Accordingly, we must determine whether Thompson produced evidence sufficient to raise a material fact issue on the question of whether the Housing Authority knew or reasonably should have known of the alleged defect in her ceiling. *See Roberts*, 946 S.W.2d at 843; *Payne*, 838 S.W.2d at 237; *Davis*, 988 S.W.2d at 374; *Abilez*, 962 S.W.2d at 251.

Thompson testified in a deposition that she first noticed the crack in her ceiling a few weeks before it collapsed. She testified that she notified an unidentified person in the Housing Authority office at that time who assured her that a maintenance man would come repair it. As time passed, she noticed that the ceiling was beginning to sag. She again called and asked that someone come and repair her ceiling.

Indulging every reasonable inference from this testimony and resolving all doubts in Thompson's favor, we conclude that this testimony raises a genuine issue of fact on the question of whether the Housing Authority knew or reasonably should have known of the defective condition.

 The Housing Authority responds that Thompson is not entitled to recover even as an invitee because the alleged defect was "open and obvious." *See Halepeska v. Callihan Interests, Inc.*, 371 S.W.2d 368, 378 (Tex.1963). We reject this contention for two reasons. First, the Housing Authority did not raise this argument in its summary judgment motion. Thus, we cannot consider it on appeal.

*See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex.1996); *Fletcher*, 26 S.W.3d at 74. Second, the Supreme Court expressly abolished the so-called "no duty" doctrine in *Parker v. Highland Park, Inc.*[1] *See* 565 S.W.2d 512, 517 (Tex.1978).

The Housing Authority further responds that summary judgment is proper because the evidence conclusively establishes that Appellants' conduct was the sole proximate cause of the occurrence in question or they were contributorily negligent. The primary issue on causation in this case is whether the Housing Authority's failure to repair the ceiling of Thompson's apartment was a proximate cause of Thompson's injuries.

■■■ Proximate cause has two elements: cause-in-fact and foreseeability. *See Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 737 (Tex.1998). To establish cause-in-fact, a plaintiff must show "that the defendant's ' "act or omission was a substantial factor in bringing about injury" without which the harm would not have occurred.' " *Id.* (quoting *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995)).[2] "[F]oreseeability requires only that the general danger, not the exact sequence of events that produced the

harm, be foreseeable." *Mellon Mortgage Co. v. Holder*, 5 S.W.3d 654, 655 (Tex.1999) (quoting *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex.1996)).

■■■ Based on Thompson's deposition testimony noted above and the summary judgment evidence proffered by the Housing Authority, the Housing Authority made no effort to repair the ceiling before the incident in question. A carpenter employed by the Housing Authority states in a summary judgment affidavit that he inspected the piece of sheetrock which collapsed in Thompson's apartment on the date of the occurrence and concluded that "it had been torn down from the ceiling." The Housing Authority contends that this statement conclusively establishes "that Appellants intentionally caused the alleged occurrence in question and their alleged injuries." This contention addresses the cause-in-fact element of proximate cause.

Regardless of the carpenter's affidavit however, both Appellants provided deposition testimony that the ceiling collapsed on them as they sat on Thompson's sofa. Indulging every reasonable inference from this testimony and resolving all doubts in Thompson's favor, we conclude that a gen-

1. The Court summarized the "no-duty" doctrine as follows:

> The "no duty" doctrine is this: the occupier of land or premises is required to keep his land or premises in a reasonably safe condition for his invitees. This includes a duty of the occupier to inspect and to discover dangerous conditions. His duty is to protect his invitees from dangers of which he, the occupier, knows, or (because of his duty to inspect) of which he *should* know in the exercise of ordinary care. *If there are dangers which are not open and obvious, he is under a duty to take such precautions as a reasonably prudent person would take to protect his invitees therefrom or to warn them thereof. But if there are open and obvious dangers of which the invitees know, or of which they are charged with knowledge, then*

*the occupier owes them "no duty" to warn or to protect the invitees. This is so, the cases say, because there is "no duty" to warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof.*

*Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 516 (Tex.1978) (citations omitted) (quoting *Halepeska v. Callihan Interests, Inc.*, 371 S.W.2d 368, 378 (Tex.1963)).

2. The internal "act or omission" quotation comes from *Prudential Insurance Co. of America v. Jefferson Associates. See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995) (quoting *Prudential Ins. Co.*, 896 S.W.2d 156, 161 (Tex.1995)).

uine issue of fact exists on the question of whose conduct was the cause-in-fact of the occurrence.

The Housing Authority also contends that Thompson's negligence was the sole proximate cause of her injuries because she sat on the sofa despite her awareness that the ceiling might collapse. This argument goes to the issues of whether Thompson's injuries were foreseeable to the Housing Authority and the percentage of responsibility which she bears under the proportionate responsibility statutes.

The Supreme Court has established the following test for foreseeability:

[I]t is not required that the particular accident complained of should have been foreseen. All that is required is [1] "that the injury be of such a general character as might reasonably have been anticipated; and [2] that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen."

*Id.* (quoting *Nixon,* 690 S.W.2d at 551).[3]

■ Indulging every reasonable inference from this testimony and resolving all doubts in Thompson's favor, we conclude that a genuine issue of material fact exists on the question of whether Thompson was a foreseeable plaintiff.

Under current tort law, a plaintiff may recover damages for injuries proximately caused by a defendant's negligent act or omission so long as the plaintiff's percentage of responsibility for the injuries does not exceed fifty percent. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.001 (Vernon 1997). When the record contains some

evidence indicating that both the plaintiff and the defendant may bear some responsibility for the plaintiff's injuries, the task of apportioning that responsibility under section 33.003 of the Civil Practice and Remedies Code is one inherently reserved to a finder of fact. *Id.* § 33.003 (Vernon 1997). Thus, a summary judgment in this setting will rarely be appropriate.

Accordingly, after indulging every reasonable inference from the testimony and resolving all doubts in Thompson's favor, we conclude that a genuine issue of material fact exists on the question of whether Thompson's responsibility for her injuries exceeds fifty percent.

The Housing Authority concludes by arguing that Thompson failed to proffer any evidence in response to the no-evidence portion of its summary judgment motion on these issues. We disagree. The evidence provided by Thompson which we have referenced above is sufficient to raise a genuine issue of material fact on each of the elements challenged in the no-evidence portion of the Housing Authority's summary judgment motion.

For these reasons, we conclude that the Housing Authority is not entitled to a summary judgment on Thompson's premise defect claim.

### Dorothy Nance

The record contains no evidence that Dorothy Nance paid to use the premises. Thus, the Housing Authority owed to Nance the duty a private landowner owes a licensee. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.022(a); *Davis,* 988 S.W.2d at

---

**3.** The *Nixon* court quoted *Carey v. Pure Distributing Corp. See Nixon v. Mr. Prop. Management Co.,* 690 S.W.2d 546, 551 (Tex.1985) (quoting *Carey,* 133 Tex. 31, 35, 124 S.W.2d 847, 849 (1939)). The internal quotation defining the elements of foreseeability apparent-

ly originated in *San Antonio & Aransas Pass Railway v. Behne. See Carey,* 133 Tex. at 35, 124 S.W.2d at 849 (quoting *San Antonio & Aransas Pass Ry.,* 231 S.W. 354, 356 (Tex. Comm'n App.1921, judgm't adopted)).

374; *McFerren,* 788 S.W.2d at 78; *Marshbank,* 669 S.W.2d at 133. To prevail then, Nance has to show that the Housing Authority had actual knowledge of the alleged defective condition and that she did not. *See Roberts,* 946 S.W.2d at 843; *Payne,* 838 S.W.2d at 237; *Davis,* 988 S.W.2d at 374. Otherwise, Nance's premise defect claim does not differ appreciably from Thompson's. *See Williams,* 940 S.W.2d at 584–85.

As previously noted, Thompson states in her deposition testimony that she notified the Housing Authority of the crack in her ceiling on at least two occasions. On the second occasion, she called the Housing Authority because the ceiling was sagging in that area. Indulging every reasonable inference from this testimony and resolving all doubts in Nance's favor, we conclude that this testimony raises a genuine issue of fact on the question of whether the Housing Authority had actual knowledge of the defective condition.

The Housing Authority's primary argument on appeal is that the summary judgment record conclusively establishes that Nance had knowledge of the dangerous condition.[4] Nance stated in her August 1996 deposition that she advised Thompson to call the Housing Authority office about the crack in the ceiling because "anybody could look at it and tell it was going to fall sooner or later." In the June 1999 affidavit Nance made in response to the Housing Authority's summary judgment motion, Nance states, "I was not aware that the crack in the ceiling· was dangerous or that the ceiling could fall prior to January 24, 1995 when I was hurt."

The Housing Authority contends that Nance's affidavit is improper because she made it in bad faith in violation of Rule of Civil Procedure 166a(h) and because she made it to raise a " 'sham' fact issue." *See Farroux v. Denny's Restaurants, Inc.,* 962 S.W.2d 108, 111 (Tex.App.—Houston [1st Dist.] 1997, no pet.) (citing *Bank of Ill. v. Allied Signal Safety Restraint Sys.,* 75 F.3d 1162, 1168–69 (7th Cir.1996)).

Rule 166a(h) provides:

Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

Tex.R. Civ. P. 166a(h). A dearth of authority exists on the force and effect of this rule in the Texas summary judgment practice. Regardless, our interpretation of this rule must be guided by the settled principle that "[t]he weight to be given a witness's testimony is a matter for the trier of fact, and a summary judgment cannot be based on an attack of a witness's credibility." *State v. Durham,* 860 S.W.2d 63, 66 (Tex.1993) (citing *Great Am. Reserve Ins. Co.,* 391 S.W.2d at 47); *accord Smith v. Altman,* 26 S.W.3d 705, 708 (Tex.App.—Waco 2000, pet. dism'd w.o.j.).

In one of the earliest reported cases disclosed by our research, the San Antonio Court of Civil Appeals had the following to say about the rule on affidavits made in bad faith:

---

**4.** Actually, the Housing Authority's central argument is that both Appellants had actual knowledge of the defective condition. As we have already explained however, Thompson's knowledge is immaterial because of her status as an invitee.

While this section provides penalties for the making of affidavits in bad faith, the striking of the offending affidavit or pleading is not made one of them. We think it rather apparent that the trial judge was of the opinion that appellants were evasive and equivocal of statement and were trifling with the court by raising frivolous and groundless defenses. But such conclusions necessarily involve fact questions relating to the credibility of witnesses, which under our system of jurisprudence must be determined by a jury (when demanded) in actions to determine civil liability. A case may be determined by summary judgment only when no material fact issues are involved and questions of law alone are presented.

*Toliver v. Bergmann*, 297 S.W.2d 208, 210 (Tex.Civ.App.—San Antonio 1956, no writ) (citations omitted).

In a more recent decision, that court has again concluded that the rule does not authorize a trial court to strike affidavits determined to have been made in bad faith. *See De Los Santos v. Southwest Tex. Methodist Hosp.*, 802 S.W.2d 749, 755 (Tex.App.—San Antonio 1990, no writ). One commentary suggests that any sanction imposed for the filing of an affidavit in bad faith should await the trial on the merits. *See* 3 Roy W. McDonald & Elaine A. Grafton Carlson, Texas Civil Practice § 18.19[f] (2d ed.2000).

We believe *Toliver* states the correct rule. It is certainly arguable that Nance made her affidavit in bad faith to avoid what appeared a certain summary judgment on her premise defect claim. However, that goes directly to her credibility, which is not an issue on which a court can grant a summary judgment. *See Durham*, 860 S.W.2d at 66; *Smith*, 26 S.W.3d at 708. As we have said on another occasion, conflicts or inconsistencies in the summary judgment evidence of a single witness "create a fact issue to be resolved by a jury." *Sosebee v. Hillcrest Baptist Med. Ctr.*, 8 S.W.3d 427, 435 (Tex.App.—Waco 1999, pet. denied) (citing *Randall v. Dallas Power & Light Co.*, 752 S.W.2d 4, 5 (Tex. 1988) (per curiam); *Knetsch v. Gaitonde*, 898 S.W.2d 386, 388–89 (Tex.App.—San Antonio 1995, no writ); *Cortez v. Fuselier*, 876 S.W.2d 519, 521–22 (Tex.App.—Texarkana 1994, writ denied)).

The Housing Authority cites *Farroux v. Denny's Restaurants* for the proposition that a trial court can disregard summary judgment evidence which it determines to have been filed to raise a "'sham' fact issue." 962 S.W.2d at 111 (citing *Bank of Ill.*, 75 F.3d at 1168–69). It appears that the First Court of Appeals relied solely on federal summary judgment authorities to reach this conclusion. However, the Supreme Court has expressly disavowed the application of federal procedural standards to summary judgment motions filed under Rule 166a. *See Casso*, 776 S.W.2d at 555–56; *accord City of Lancaster v. Chambers*, 883 S.W.2d 650, 657 (Tex.1994); *Bexar County v. Giroux–Daniel*, 956 S.W.2d 692, 698 n. 5 (Tex.App.—San Antonio 1997, no pet.).

For these reasons, we adhere to our statement in *Sosebee*. If a party provides inconsistent or conflicting summary judgment proof, that party has created a fact issue for the trier of fact to resolve. *See Randall*, 752 S.W.2d at 5; *Sosebee*, 8 S.W.3d at 435; *Knetsch*, 898 S.W.2d at 388–89; *Cortez*, 876 S.W.2d at 521–22. As the Supreme Court has stated, "If the motion involves the credibility of affiants or deponents, or the weight of the showings or a mere ground of inference, the motion should not be granted." *Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47; *accord Gulbenkian v. Penn*, 151 Tex. 412,

417, 252 S.W.2d 929, 932 (1952); *Smith,* 26 S.W.3d at 708.

 It can be argued that this approach allows an unscrupulous party to file summary judgment affidavits solely for the purpose of creating "sham" fact issues. However, we must rely on attorneys as officers of the court to honor their duty of candor toward the court. *See* Tex. Disciplinary R. Prof'l Conduct 3.03, *reprinted in* Tex. Gov.Code Ann., tit. 2, subtit. G app. A (Vernon 1998). An attorney's failure to observe this duty constitutes professional misconduct for which sanctions may be imposed. *See* Tex.R. Disciplinary P. 1.06(Q)(1), *reprinted in* Tex. Gov.Code Ann., tit. 2, subtit. G app. A–1 (Vernon 1998).

In addition, if the trial court determines that a summary judgment affidavit has been filed in bad faith, the court may impose sanctions on the party. *See* Tex.R. Civ. P. 166a(h). Such sanctions can include payment to the other party of "reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees...." *Id.*

Bearing these principles in mind, we hold that the trial court had no authority to disregard Nance's favorable summary judgment proof on the issue of her knowledge. Accordingly, we take the evidence favorable to Nance as true and disregard all contrary evidence. Indulging every reasonable inference from this evidence and resolving all doubts in Nance's favor, we conclude that this testimony raises a genuine issue of fact on the question of whether Nance had actual knowledge that the crack in Thompson's ceiling constituted a defective condition.

The Housing Authority makes the same arguments on other aspects of Nance's premise defect claim (cause-in-fact, foreseeability, proportionate responsibility) as it made against Thompson's claim. We reject these arguments for the same reasons we rejected them with respect to Thompson's claim. The Housing Authority likewise argues that Nance failed to proffer any evidence in response to the no-evidence portion of its summary judgment motion on these issues. We reject this contention for the same reasons we rejected it with respect to Thompson's claim.

For these reasons, we conclude that the Housing Authority is not entitled to a summary judgment on Nance's premise defect claim.

### BREACH OF CONTRACT/WARRANTY OF HABITABILITY

Thompson alleges in the petition that her lease with the Housing Authority provided that the premises would be safe for habitation. She frames this as a breach of contract claim in the petition and seeks compensation for her injuries and for her attorney's fees. *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 1997) (plaintiff may recover attorney's fees in suit on contract). On appeal however, Thompson characterizes this claim as one for breach of a landlord's warranty of habitability.

The Housing Authority's contract with Thompson waived its immunity from liability on any claims arising under the contract. *See Federal Sign,* 951 S.W.2d at 408. However, this contract did not operate to waive the Housing Authority's immunity from suit. *Id.*

Section 392.006 of the Local Government Code expressly provides that a housing authority is subject to "all landlord obligations and tenant remedies, *other than a suit for personal injuries,* as set forth in any lease or rental agreement and in Chapters 24, 54, 91, and 92 of the Property Code." Tex. Loc. Gov.Code Ann. § 392.006 (emphasis added). Chapter 24 governs

forcible entry and detainer suits. *See* Tex. Prop.Code Ann. §§ 24.001–.011 (Vernon 2000). The pertinent provisions of chapter 54 govern a residential landlord's lien. *Id.* §§ 54.041–048 (Vernon 1995). Chapter 91 governs the termination of the landlord-tenant relationship. *Id.* §§ 91.001–.006 (Vernon 1995 & Supp.2001). The pertinent provisions of chapter 92 govern the landlord's duty to repair the premises and remedies available to the tenant for the landlord's failure to repair the premises.[5] *Id.* §§ 92.051–.061 (Vernon 1995 & Supp. 2001). However, chapter 92 does not govern a suit for personal injury damages. *See id.* § 92.061 (Vernon 1995); *Moreno v. Brittany Square Assocs., L.P.,* 899 S.W.2d 261, 263 (Tex.App.—Houston [14th Dist.] 1995, writ denied).

■■■ Only chapter 92 arguably applies to Thompson's claim. However, she does not seek any of the remedies provided therein. Although section 392.006 appears to constitute a limited waiver of a housing authority's immunity from a suit brought under chapter 92, it does not waive a housing authority's immunity from "a suit for personal injuries." *See* Tex. Loc. Gov.Code Ann. § 392.006; *see also* Tex. Prop.Code Ann. § 92.061; *Moreno,* 899 S.W.2d at 263. Because Thompson seeks only personal injury damages in her lawsuit, we conclude that the legislature has not waived the Housing Authority's immunity from suit for Thompson's contract claim. To the extent Thompson seeks to recover on a breach of warranty theory, we likewise

conclude that the Housing Authority is immune.

For these reasons, the court did not err in granting the Housing Authority's summary judgment motion on Thompson's contract/warranty claim.

### EXEMPLARY DAMAGES

■■■ Appellants seek exemplary damages in their petition. The Tort Claims Act does not authorize exemplary damages. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.024 (Vernon 1997). When a governmental unit is engaged in a proprietary function however, that entity may be found liable for exemplary damages upon a showing of "intentional, willful, or grossly negligent conduct which ... can be imputed directly to the governing body of the [governmental unit]." *City of Gladewater v. Pike,* 727 S.W.2d 514, 519–22 (Tex.1987).

Nonetheless, section 392.006 expressly provides that "the functions of a housing authority are essential governmental functions and not proprietary functions." Tex. Loc. Gov.Code Ann. § 392.006. Thus, a plaintiff cannot recover exemplary damages from a housing authority. *Cf. Pike,* 727 S.W.2d at 519–22.

For these reasons, the court did not err in granting the Housing Authority's summary judgment motion on Appellants' claim for exemplary damages.

### CONCLUSION

Indulging every reasonable inference from the evidence and resolving all doubts

---

5. The "judicial remedies" provided to a tenant by chapter 92 include: "(1) an order directing the landlord to take reasonable action to repair or remedy the condition; (2) an order reducing the tenant's rent, from the date of the first repair notice, in proportion to the reduced rental value resulting from the condition until the condition is repaired or remedied; (3) a judgment against the land-

lord for a civil penalty of one month's rent plus $500; (4) a judgment against the landlord for the amount of the tenant's actual damages; and (5) court costs and attorney's fees, excluding any attorney's fees for a cause of action for damages relating to a personal injury." Tex. Prop.Code Ann. § 92.0563(a) (Vernon 1995). Thompson does not seek any of these remedies in her lawsuit.

in Appellants' favor, we conclude that a genuine issue of fact exists on Appellants' premise defect claims. Conversely, the Housing Authority conclusively established its entitlement to judgment as a matter of law on Thompson's contract/warranty claim and on Appellants' claim for exemplary damages. Accordingly, we sustain Appellants' sole point in part and overrule it in part.

We affirm that portion of the judgment which decrees that Thompson take nothing on her contract/warranty claim and that Appellants take nothing on their claim for exemplary damages. We reverse that portion of the judgment which decrees that Appellants take nothing on their premise defect claims, sever, and remand this cause to the trial court for further proceedings consistent with this opinion. *See Fletcher*, 26 S.W.3d at 80.