Barbara **CORBIN**, Linda Aslason, and Elaine Dillon, Appellants,

v.

The **CITY OF KELLER**, Texas, Appellee.

No. 2–98–194–CV.

Court of Appeals of Texas, Fort Worth.

Aug. 5, 1999.

Rossetti and Goetz, Michael Rossetti, Arlington, for Appellant.

Pruessner and Shilling, Kathryn L. Shilling, Dallas, for Appellee.

Panel A: CAYCE, C.J.; DAY and RICHARDS, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

This appeal presents the question of whether a low-water crossing submerged by flood waters constitutes a special defect under the Texas Tort Claims Act (hereinafter "the Act").[1] Appellants Barbara Corbin, Linda Aslason, and Elaine Dillon appeal from a summary judgment that dismissed on immunity grounds their wrongful death suit against the City of Keller, Tarrant County, Texas for the drowning death of their mother, Mary Lovvorn. Appellants contend that the flooded condition of the low-water crossing where Mary drowned was a special defect and that, as a result, the City of Keller is not immune from liability for Mary's death. Because we hold that the flooded condition of the low-water crossing was not a special defect under the Act, we will affirm the summary judgment.

## BACKGROUND

Mary Lovvorn drowned after she drove her car into a flooded low-water crossing on Bear Creek Road in the City of Keller (the City) in the early morning hours of November 24, 1996. The low-water crossing spans Bear Creek and is situated in a residential area of the City. Because the creek often floods during periods of heavy rain, the City erected a six-foot depth gauge and warning sign at the crossing that read "Danger Low Water Crossing." Prior to her death, Mary routinely traveled over the low-water crossing during trips to visit her daughter, Barbara Corbin.

Several hours before the incident that led to Mary's drowning, the City began experiencing severe thunderstorms that were preceded by scattered showers throughout the day. The thunderstorms prompted the National Weather Service to issue a "flash flood warning" effective until 1:00 a.m for the area. The weather bulletin further warned that "street and lowland flooding [were] likely." As a result, City police officers patrolled the streets and low lying areas, looking for roadways submerged by waters. Around 11:30 p.m., police officers closed a low-water crossing in Bear Creek Park, south of the crossing at issue, due to high water. A check of the remaining low-water crossings, including the one involved in this case, showed no water on the roadway.[2]

Between 1:30 and 2:00 a.m., the manager of Mary's mobile home park called to inform her that Bear Creek was flooding. Fearing that the rising waters would reach her mobile home, Mary called her daughter, Barbara Corbin, and asked if she could spend the night. After Mary and Barbara discussed possible routes to bypass the low-water crossing at issue, Mary set out toward Barbara's house. Mary, however, never arrived. At approximately 2:00 a.m., Barbara's husband, Monty Corbin, began searching for Mary with no success. The Corbins then contacted the police to report that Mary was missing. A few hours later, Mary's body and car were pulled from Bear Creek, just south of the crossing at issue.

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001–.109 (Vernon 1997 & Supp.1999) (controlling the tort liability of governmental units).

2. The record reflects that a few hours later, sometime between 1:00 a.m. and 2:00 a.m. on November 24, another motorist encountered flooding at the low-water crossing at issue.

Appellants sued the City for negligence under the Act, alleging that the flood waters were either an unreasonably dangerous premise defect or a special defect and that the City had failed to reasonably warn or protect Mary. Appellants also alleged that the negligent design of the low-water crossing caused or contributed to the flooding, but later withdrew this complaint. The City moved for summary judgment on several grounds, including that the flooded crossing was a premise defect and that it owed no duty to Mary because she knew the creek was susceptible to flooding. After a hearing, the trial court granted summary judgment in favor of the City.

## STANDARD OF REVIEW

The standards for reviewing a motion for summary judgment are well established. The movant has the burden of showing that there is no genuine material fact issue and that it is entitled to judgment as a matter of law. *See Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996). A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established, *see Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997), or if, after an adequate time for discovery, there is no evidence to support an essential element of plaintiff's cause of action. *See* TEX.R. CIV. P. 166a(i). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *See Science Spectrum, Inc.,* 941 S.W.2d at 911.

## WERE THE FLOOD WATERS AT THE LOW–WATER CROSSING ON BEAR CREEK ROAD A SPECIAL DEFECT?

Appellants bring six points challenging the summary judgment. In point one,

they argue that the flood waters at the low-water crossing on Bear Creek Road constituted a special defect within the meaning of the Act.

█ Generally, a governmental unit[3] enjoys sovereign immunity from suit and may be sued only if liability arises under the Act. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.025 (Vernon 1997). If a plaintiff fails to prove the existence and violation of a legal duty sufficient to impose liability under the Act, sovereign immunity remains intact. *See City of Denton v. Page,* 701 S.W.2d 831, 834 (Tex.1986).

Under the Act, a governmental unit is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM.CODE ANN. § 101.021(2). In cases where the claim involves real property, the Act further limits the governmental unit's liability as follows:

(a) If a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.

(b) The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices....

*Id.* § 101.022.

█ The terms "excavation" and "obstruction" have been interpreted to mean conditions that present "an unexpected and unusual danger to ordinary users of roadways." *State Dep't of Highways & Pub. Transp. v. Kitchen,* 867 S.W.2d 784, 786 (Tex.1993). Most property defects are

---

3. A "governmental unit" includes political subdivisions of the state such as cities. TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B) (Vernon Supp.1999).

premise defects, not special defects. *See Texas Dep't of Transp. v. Horrocks,* 841 S.W.2d 413, 416 (Tex.App.—Dallas 1992), *rev'd on other grounds,* 852 S.W.2d 498 (Tex.1993). Whether a condition is a premise defect or a special defect under the Act is a question of law for the court to decide. *See State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 238 (Tex.1992) (op. on reh'g). Moreover, the classification of premise or special defect involves statutory construction and is done on a case-by-case basis. *See State v. Burris,* 877 S.W.2d 298, 299 (Tex.1994); *State v. Williams,* 932 S.W.2d 546, 550 (Tex.App.—Tyler 1995), *writ denied,* 940 S.W.2d 583 (Tex.1996).

■■■ Where a special defect is at issue, the Act raises the duty a governmental unit owes to the claimant to that of an invitee. *See Payne,* 838 S.W.2d at 237–38. If the governmental entity is aware of a dangerous condition or could have discovered it upon the exercise of reasonable diligence, then the government owes an invitee the duty to either warn of the condition or to take steps to make the condition reasonably safe. *See id.* In contrast, where an ordinary premise defect is at issue, the governmental unit owes a claimant the same duty as that owed by a private person to a licensee. *See* Tex. Civ. Prac. & Rem.Code Ann. § 101.022(a). This duty requires that an owner not injure a licensee by willful, wanton, or grossly negligent conduct, and that the owner use ordinary care to either warn a licensee of, or make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not. *See Payne,* 838 S.W.2d at 237.

■■■ In this case, the summary judgment evidence shows that, on the date of Mary's death, weather conditions in the City were conducive to flash flooding, especially in low lying areas. It had rained in the City throughout the day, and severe thunderstorms passed over the City most of the evening. The expectation of flooding caused the National Weather Service to issue a "flash flood warning" and a warning that "street and lowland flooding [were] likely." Given the inclement weather conditions that existed at the time of the incident, we conclude that the flood water at the low-water crossing on Bear Creek Road was neither unusual nor unexpected, but entirely predictable to the ordinary motorist traveling in such weather. Therefore, the flood water was not a special defect.

The supreme court's analysis in *Kitchen* guides us in reaching this conclusion. In that case, Calvin Kitchen was driving across a bridge early on a cold January morning when his vehicle skidded out of control on a patch of ice and collided with an oncoming truck. Kitchen was killed and his passenger was injured. The condition at issue was the ice that had accumulated on the bridge as a result of precipitation accompanied by freezing temperatures. The supreme court held that the ice was not a special defect because "an icy bridge is something motorists can and should anticipate when the weather is conducive to such a condition." *Kitchen,* 867 S.W.2d at 786.

Applying the rationale of *Kitchen* to the facts of this case, a flooded low-water crossing during flash flood conditions is neither unexpected nor unusual. Motorists can and should anticipate flooding in low lying areas when the weather is conducive to flooding. *See id.; see also City of Fort Worth v. Gay,* 977 S.W.2d 814, 819 (Tex.App.—Fort Worth 1998, no pet.) (pool of water in storm sewer not unexpected or unusual after rainfall); *Sipes v. Texas Dep't of Transp.,* 949 S.W.2d 516, 521 (Tex. App.—Texarkana 1997, writ denied) (tall grass and weeds growing along Texas highway in July not unusual or unexpected when summer weather is conducive to the growth of such vegetation). The open and obvious nature of the flood waters also serve to defeat the unexpected and unusual requirement for a special defect. *See Sipes,* 949 S.W.2d at 521.

We recognize that our sister court in El Paso has characterized two feet of flood water at a low-water crossing in the Frio

River in southwest Texas as a special defect. *See Miranda v. State*, 591 S.W.2d 568, 569 (Tex.Civ.App.—El Paso 1979, no writ); *see also Texas Dep't of Transp. v. Abilez*, 962 S.W.2d 246, 251 (Tex.App.—Waco 1998, pet. denied) (government conceded that flood waters were a special defect); *City of San Antonio v. Rodriguez*, 856 S.W.2d 552, 558 (Tex.App.—San Antonio 1993, writ denied) (op. on reh'g) (trial court did not categorize flood waters as premise or special defect because city was liable under either theory). The court in *Miranda*, however, did not indicate what the weather conditions were on the date of the incident, or whether other factors existed that would have prevented an ordinary motorist from anticipating the two feet of flood waters at the Frio River crossing. Moreover, *Miranda* was decided long before, and without the benefit of, the supreme court's decision in *Kitchen*. Consequently, assuming that the unarticulated facts of *Miranda* would remove it from the controlling rule of *Kitchen*, we do not read *Miranda* as authority for the proposition that flood waters on a roadway constitute a special defect under any and all circumstances. While flood waters *may* constitute a special defect under certain circumstances when floods may be unexpected or unusual,[4] flood waters in a low-water crossing during a period of flash flooding can and should be anticipated by the ordinary motorist.

## DID THE FLOODED CONDITION OF THE ROAD CONSTITUTE A PREMISE DEFECT THAT WAS UNKNOWN TO MARY?

■ Having determined that the flooded condition of the low-water crossing on Bear Creek Road was not a special defect, we must now address whether the City was entitled to summary judgment under a premise defect theory.

■ To prevail in a premise defect case under the Act, a plaintiff must prove that:

(1) the condition of the premises created an unreasonable risk of harm;

(2) the governmental unit actually knew of the condition;

(3) plaintiff did not actually know of the condition;

(4) the governmental unit failed to exercise ordinary care to protect plaintiff from the dangerous condition; and

(5) the governmental unit's failure to exercise ordinary care proximately caused plaintiff's injury.

*See Payne*, 838 S.W.2d at 237; *City of Fort Worth v. Adams*, 888 S.W.2d 607, 613 (Tex.App.—Fort Worth 1994, writ denied), *cert. denied*, 516 U.S. 992, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995). The City contends that it owed no duty to Mary because she knew of the premise defect, i.e., that the low-water crossing would be flooded. As proof, the City produced the following evidence:

(1) Deposition testimony from Barbara that, based on their telephone conversation the morning of Mary's death, Mary was aware of the creek's rising waters and knew to avoid the low-water crossing at issue en route to Barbara's home.

(2) Deposition testimony from another of Mary's daughters, Linda Aslason,

---

4. For example, in *State Dep't of Highways & Pub. Transp. v. Zachary*, 824 S.W.2d 813 (Tex.App.—Beaumont 1992, writ denied), a temporary road repair created a "dam" that prevented water from properly draining off the roadway. After intermittent rains, several inches of water pooled on the roadway and a motorist was killed when he drove into the water and lost control of his car. Expert testimony indicated that an ordinary motorist would not have anticipated the large amount of water that had collected on the road as a result of the repair work. *See id.* at 816. The unexpected and unusual nature of the pooled water in *Zachary* distinguishes that case from the instant case. Unlike *Zachary* where the flooded condition was not something that ordinary motorists could have anticipated, the flooding in this case could and should have been anticipated by ordinary motorists because of the weather conditions.

that Mary "definitely knew" that the Bear Creek low-water crossing would be flooded the day she died, "[b]ecause she reassured Barbara that she knew exactly what street to go down [and] not to go down Bear Creek or off of Main."

(3) Deposition testimony from Mary's other daughter, Elaine Dillon, and her son-in-law, Monty Corbin, that Mary knew to avoid the low-water crossing on Bear Creek road when it was raining and that she "knew not to go down Bear Creek Road because Bear Creek floods."

Appellants assert that Mary's knowledge of the flood potential is irrelevant to the City's duty to warn under a special defect theory. However, under an ordinary premise defect case, awareness of the dangerous condition is material, and appellants have not presented any evidence controverting the testimony that Mary actually knew of the flooded condition at the low-water crossing. *See Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex. 1995) (where defendant's evidence defeats an element of plaintiff's cause of action, burden shifts to plaintiff to create a fact issue over challenged element).

Having reviewed the evidence and its reasonable inferences in the light most favorable to appellants as the nonmovants, we find that the summary judgment evidence establishes that Mary had knowledge of the condition. Because this knowledge negates an element of appellants' premise defect claim, the City was entitled to summary judgment as a matter of law. *See Science Spectrum, Inc.,* 941 S.W.2d at 911. Point one is overruled.

## CONCLUSION

Because the flood waters were a premise defect of which Mary had knowledge and not a special defect, the City was entitled to summary judgment on immunity grounds as a matter of law. We need not address points two through six concerning whether the City could avail itself of official immunity in a premises liability action, whether appellants produced sufficient evidence to create a fact issue on causation, and whether the City's duty to warn of a special defect was discharged by the depth gauge or warning sign at the low-water crossing. *See Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989) (summary judgment must be affirmed if any theory is meritorious). The judgment of the trial court is affirmed.