Rena Kirby Brown v. City of Fort Worth, Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-373-CV

RENA KIRBY BROWN APPELLANT

V.

CITY OF FORT WORTH, TEXAS APPELLEE

------------

FROM THE 48TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Rena Kirby Brown was delivering newspapers at approximately 3:34 a.m. on November 14, 2000.  She slowed her car in the 3850 block of Wosley Drive as she approached the Wonder Drive intersection.  She noticed water standing in the intersection.  When Brown stopped her car at the intersection, it began to sink into the street, into a large hole that opened underneath it.  A twelve-inch water main had ruptured under the street and had eroded the roadbed prior to Brown’s arrival at the intersection.  The street did not collapse—that is, no hole existed in the street—until the weight of Brown’s car came to rest upon the portion of the street that had been eroded from underneath by the water leak.  Brown sued the City of Fort Worth, alleging a special defect existed on Wosley Drive.  Eventually, the City filed a traditional motion for summary judgment asserting that it had conclusively negated an element of Brown’s special defect claim, namely, the requirement that the City knew or should have known of the dangerous condition.  The trial court granted summary judgment for the City, and Brown appeals.  Brown raises three issues challenging the summary judgment entered against her.

In the appeal of a traditional summary judgment, we must determine whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action or whether the defendant has conclusively established all elements of his affirmative defense.  
Velsicol Chem. Corp. v. Winograd
, 956 S.W.2d 529, 530 (Tex. 1997); 
Walker v. Harris
, 924 S.W.2d 375, 377 (Tex. 1996); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor.  
See Cathey v. Booth
, 900 S.W.2d 339, 341 (Tex. 1995); 
Nixon v. Mr. Prop. Mgmt. Co.
, 690 S.W.2d 546, 549 (Tex. 1985).  The propriety of a summary judgment is a question of law;  therefore, we review the trial court's granting of a motion for summary judgment de novo. 
Natividad v. Alexsis, Inc
., 875 S.W.2d 695, 699 (Tex. 1994); 
Tex. Commerce Bank-Rio Grande Valley v. Correa
, 28 S.W.3d 723, 726 (Tex. App.—Corpus Christi 2000, pet. denied).

“Special defects are excavations or obstructions . . . or other conditions which 'present an unexpected and unusual danger to ordinary users of roadways.'”  
State Dep't of Highways v. Kitchen
, 867 S.W.2d 784, 786 (Tex. 1993) (quoting 
State Dep’t of Highways v. Payne
, 838 S.W.2d 235, 237 (Tex. 1992)).  “A special defect must be distinguished by some unusual quality outside the ordinary course of events.”  
Mitchell v. City of Dallas
, 855 S.W.2d 741, 747-48 (Tex. App.—Dallas 1993), 
aff'd
, 870 S.W.2d 21 (Tex. 1994).  The parties here agree that the hole created on Wosley Drive was a special defect.

The City owes Brown the same duty to warn of a special defect that a private land owner owes an invitee.  
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 §  101.022(b) (Vernon 2005); 
Harris County v. Eaton
, 573 S.W.2d 177, 180 (Tex. 1978).  To establish liability an invitee must prove that:

(1) a condition of the premises created an unreasonable risk of harm to the invitee;

(2) the owner knew or reasonably should have known of the condition;

(3) the owner failed to exercise ordinary care to protect the invitee from danger;

(4) the owner's failure was a proximate cause of injury to the invitee.

Payne
, 838 S.W.2d at 237 (citing 
Corbin v. Safeway Stores, Inc.
, 648 S.W.2d 292, 295 (Tex. 1983)).  The City moved for summary judgment on the ground that it neither knew, nor reasonably should have known, of the condition on Wosley Drive.

In support of its motion for summary judgment, the City attached the affidavit of Barbara Greene, an employee of the Street Division of the City’s Transportation and Public Works Department.  Greene’s affidavit indicates that she is responsible for receiving and logging all complaints with streets and other City property and that the City had received no notice of any problem with the street at the intersection of Wosley Drive and Wonder Drive prior to Brown’s accident.  The City also attached an affidavit from Stephen M. Tackett, the Water Systems Superintendent for the City’s Water Department.  Tackett explained that he had caused the records of the Field Operations Division responsible for receiving complaints or reports of water main breaks and other defects associated with the water lines or mains within the City of Fort Worth to be searched for the period of November 12, 2000
 through November 14, 2000
.  During that period, the City had received no reports of any problem with a water main or with the street at the intersection of Wosley Drive and Wonder Drive.  Finally, the City attached the affidavit of Charly Angadicheril, the Assistant Water Director for the Production Division for the City.  Angadicheril explained that the “log book” documented a drop in the Sun County Water storage tank at approximately 4:00 a.m. on November 14, 2000.  He said that

[t]he Sun County Water Tank is situated in the Southside III pressure plane, one of nine (9) pressure planes in the City, and comprises in excess of four square miles, and in excess of two hundred miles of water mains and lines.  The intersection of Wonder and Wosley Drives is within the Southside III pressure plane.  After the loss of water, SCADA
(footnote: 2) personnel notified the Field Operations Division of the Department, the Division charged with the responsibility of repair of leaks and breaks, of a possible break somewhere within the Southside III pressure plane.  The SCADA system is not designed to provide the location or sources of water losses.  It is designed to show gains or losses of water from particular reservoirs (water tanks) and pressure changes in some of the larger (24" and over) water mains.  A broken twelve inch water main was found at the intersection of Wonder and Wosley Drives within the water plane at approximately 3:30, as a result of the accident involving Ms. Rena Brown.

Ms. Brown attached to her response opposing the City’s motion for summary judgment additional documents produced by the City establishing, according to Brown, a dramatic decrease in pump pressure at 2:12 a.m. on November 14, 2000.  According to Brown, SCADA personnel should have notified the field operations division or other divisions of this pressure drop and required them to start looking for a leak.
(footnote: 3)        

Viewing the summary judgment evidence in the light most favorable to Brown, it conclusively established that the City neither knew nor should have known of the hole on Wosley Drive at the intersection of Wonder Drive prior to Brown’s accident.  The hole did not exist before Brown’s car drove on top of the weakened road.  And even if, as urged by Brown, the City knew or should have known at 2:12 a.m. of the existence of some type of water leak, the City conclusively established that the information it possessed from 2:12 a.m. up through 3:30 a.m. (when Brown’s accident caused the reporting of the water leak) could not be utilized to pinpoint the location of a suspected leak.  Thus, even if the City should have known of the existence of a leak, there is no summary judgment evidence controverting the City’s conclusive evidence that it neither knew nor should have known the location of the leak prior to 3:30 a.m. on November 14, 2000.  We overrule Brown’s first, second, and third issues.  We affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL A: CAYCE, C.J.; GARDNER and WALKER, JJ.

DELIVERED: June 16, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
SCADA stands for Supervisory Control And Data Acquisition.  It consists of a Computer system installed with customized software.  This system communicates with remote terminal units (RTUs) installed in the field using a microwave radio system.  RTUs are installed a pump stations, tank sites, and metering stations.  RTUs collect information such as pressure, flow, temperature, etc., from different types of sensors installed at the sites.  The SCADA system has no capabilities to detect breaks or leaks in the distribution system water mains.

3:
Brown relies heavily upon our decision in 
Corbin v. City of Keller
, 1 S.W.3d 743, 747 (Tex. App.—Fort Worth 1999, pet. denied).  In 
Corbin
, we held that flooding across low water areas of a road did not constitute a special defect, and we upheld the trial court’s summary judgment for the City of Keller  on the ground that the plaintiff, who lived near the low-water crossing, had knowledge of the condition.  
Id.
 at 747-49.  Thus, 
Corbin
 does not appear to support Brown’s position.