IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00044-CV

 

Patrick Stewart, Sr. and Setria 

Whitfield, both Individually and 

as Heirs to the Estates of Patrick 

Stewart, Jr. and Brooke Stewart,

                                                                      Appellants

 v.

 

City of Corsicana, Texas ,

                                                                      Appellee

 

 

 



From the 13th District Court

Navarro County, Texas

Trial Court No. 05-00-14111-CV

 



Opinion



 








          Patrick Stewart, Sr. and Setria
Whitfield, both individually and as heirs to the Estates of their children Patrick
Stewart, Jr. and Brooke Stewart, appeal the trial court’s granting of a plea to
the jurisdiction filed by the City of Corsicana in their premises liability
suit.  They contend in six issues that the court erred by: (1) granting the
City’s plea to the jurisdiction; (2) failing to accept as true all evidence favorable
to them; (3) making credibility determinations in deciding the plea to the
jurisdiction; (4) ruling on the merits of their claims in deciding the plea to
the jurisdiction; (5) applying a constructive knowledge standard to Stewart’s
knowledge of the dangerous condition at issue; and (6) granting the plea to the
jurisdiction notwithstanding the existence of “a clear question of fact
regarding the City’s knowledge of the dangerous condition.”  We will reverse
and remand.

Background

          Stewart had driven to Garland to get his children, two-year-old Patrick and one-year-old Brooke, from their
mother Whitfield.  On the way back, he stopped in Corsicana at his mother’s
house to call Whitfield and tell her they had made it safely to Corsicana and would be driving on to Kerens where he lived.  It was after midnight when
they arrived in Corsicana.[1]

          Unbeknownst to Stewart, the National
Weather Service had issued several severe weather notices including: (1) a
flash flood watch at 1:59 p.m. for Navarro County and surrounding counties; (2)
a severe thunderstorm watch for Navarro and surrounding counties at 7:51 p.m.;
(3) a severe thunderstorm warning for Navarro County at 12:31 a.m. stating
“National Weather Service Doppler radar detected a severe thunderstorm over Corsicana”;
and (4) a flash flood warning for Navarro County at 1:04 a.m., noting “high
water has been reported on Interstate 45 at mile marker 241” and “Doppler radar
indicated very heavy rain.”

          It was raining hard when Stewart
arrived at his mother’s house, and she told him that the business route for Interstate
45 was closed due to flooding.  He decided to take his usual route home, which
would take him on Bunert Road.  After Stewart drove onto the low-water crossing
on Bunert Road at Post Oak Creek, he noticed water across the road.  He stopped
as he approached a tree laying across the road and blocking the path of his car. 
The car stalled, and he tried without success to restart it.  Stewart initially
picked Patrick and Brooke up, intending to carry them to the water’s edge. 
However, Stewart feared that he could not safely carry them because the water
was moving too swiftly, so he left them in the car and went for help.

          When Stewart returned, his car had
been swept away by the floodwaters.  Patrick and Brooke were drowned.

          Stewart and Whitfield allege in their
petition that the low-water crossing is a special defect or alternatively a
premise defect.  The primary contentions in the City’s plea to the jurisdiction
are that (1) the low-water crossing is not a special defect as a matter of law
and (2) the City is not liable under a premise defect theory because it did not
have actual knowledge at the relevant time that the crossing posed an
unreasonable risk of harm to those traveling across it.

          At an evidentiary hearing, the court
heard testimony from Stewart and several other witnesses.  Stewart testified
that he had lived in the area twenty-two years and had driven across that part
of Bunert Road many times.  He does not recall any time in the last twenty-two
years when the creek has flooded over the crossing at Bunert Road.

          The City’s public works director
Ronald Lynch testified that the City had previously closed the low-water
crossing on Bunert Road several times for public safety because of flooding.

          Diana Rawlins, who served on the
Corsicana City Council from 2001 to 2003, testified that she knew as a member
of the council that this crossing tended to flood during periods of heavy rain
and that this situation was discussed with at least one other member of the
council and with the city manager.

          After the hearing, the court took the
matter under advisement and received additional briefing and evidence from the
parties.  The court signed an order granting the City’s plea to the
jurisdiction about six months after the hearing.  Contemporaneously with this
order, the court issued written findings of fact and conclusions of law.  The
court’s second through fifth conclusions in particular are relevant here.

2.                 
Given the circumstances
established by the evidence, the Court finds that the conditions present at the
Bunert Crossing did not constitute a special defect.

 

3.                 
The Court does not find the
testimony of the witness Rawlins persuasive or credible concerning her belief
that circumstances constituting a special defect existed.

 

4.                 
The Court further finds that
any rational motorist familiar with the roadway, the conditions and propensity
for flooding along the subject creek would not face an unexpected or unusual
danger.

 

5.                 
The Court also finds that
while circumstances may exist which demonstrate a special defect due to roadway
flooding, the evidence in this case fails to establish such circumstances.

 

          At the City’s request, the court made
what we will characterize as amended findings of fact and conclusions of law
about one month later.[2]  Amended
Finding of Fact No. 1 recites in pertinent part:

1.       The following Findings of
Fact are based upon standard credibility factors, including, but not limited
to, the following: (1) the manner in which the witness testified; (2) the
presence of inconsistent testimony; (3) whether the witness was impeached; and
(4) whether the witness had any motivation to be dishonest.  The Court finds
all testimony which is inconsistent with the following Findings of Fact not to
be credible.  Specifically, the Court finds that Diana P. Rawlins is not a
credible witness and consequently discredits her testimony to the extent that
it is inconsistent with the below Findings of Fact.

 

Amended Findings of Fact Nos. 3 and 4 provide:

3.                 
The Bunert Road Crossing was
designed to allow water to pass over the roadway at flood stage.  In past
years, Corsicana closed this crossing when notified of high water and a
potential hazard.  Prior to this incident, there were no complaints, reports,
claims or comments regarding flood-related accidents or injuries at the Bunert
Road Crossing.  On the dates in question, Corsicana was unaware of the flooding
condition at the Bunert Road Crossing.

 

4.                 
Plaintiff, Patrick D.
Stewart, Sr. (“Plaintiff Stewart”) regularly drove over the Bunert Road
Crossing.  He was aware that the Bunert Road Crossing was in a low area and
subject to flooding.  He was familiar with the area based upon his lifetime
residence in Navarro County.  On April 30, 2004, Plaintiff Stewart knew that
the Bunert Road Crossing could flood under the existing weather conditions. 
Again, during this same time period, Corsicana was unaware of any flood
condition at the Bunert Road Crossing.

 

          The court’s amended Conclusions of Law
Nos. 11 to 14, inclusive, are relevant to this appeal and provide:

11.             
The Court does not find the
testimony of Diana P. Rawlins persuasive or credible concerning her belief that
circumstances constituting a special or premises defect existed.  Due to the
weather conditions and Plaintiff Stewart’s familiarity with the Bunert Road
Crossing.  [sic]  Even if Ms. Rawlins had been credible, it is not relevant.

 

12.             
The Court further finds that
any rational motorist familiar with the roadway, the conditions and propensity
for flooding along the subject creek would not face an unexpected or unusual
danger.

 

13.             
Given the circumstances
established by the evidence, the Court finds that the conditions present at
Bunert Road Crossing did not constitute a special or premises defect.  While
other circumstances may exist that demonstrate a special or premise defect due
to roadway flooding, the evidence in this case fails to establish such other
circumstances.

 

14.             
Plaintiff’s premises defect,
special defect and design defect claims are barred by the TTCA.

 

Premises Liability

          Under the Texas Tort Claims Act,
sovereign immunity is waived and a governmental unit is liable for personal
injury or death “caused by a condition or use of tangible personal or real
property if the governmental unit would, were it a private person, be liable to
the claimant according to Texas law.”  Tex.
Civ. Prac. & Rem. Code Ann. § 101.021(2) (Vernon 2005). A
governmental unit may be subject to premises liability for either ordinary
premise defects or special defects.  An ordinary premise defect is a condition of
the premises which creates an unreasonable risk of harm.  State Dep’t
of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992); Tex. Dep’t of Transp. v. Fontenot, 151 S.W.3d 753, 760-61 (Tex.
App.—Beaumont 2004, pet. denied); Corbin v. City of Keller, 1 S.W.3d 743,
748 (Tex. App.—Fort Worth 1999, pet. denied).  Special defects are
“excavations,” “obstructions,” or other conditions which “present an unexpected
and unusual danger to ordinary users of roadways.”  State Dep’t of Highways
& Pub. Transp. v. Kitchen, 867 S.W.2d 784, 786 (Tex. 1993) (per curiam)
(quoting Payne, 838 S.W.2d at 238); see also Tex. Civ. Prac. & Rem. Code Ann. § 101.022(b)
(Vernon Supp. 2006); Fontenot, 151 S.W.3d at 761; Corbin, 1
S.W.3d at 746.

          For an ordinary premise defect, “the
governmental unit owes to the claimant only the duty that a private person owes
to a licensee on private property, unless the claimant pays for the use of the
premises.”[3]  Tex. Civ. Prac. & Rem. Code Ann. § 101.022(a)
(Vernon Supp. 2006); Payne, 838 S.W.2d at 237; Fontenot, 151
S.W.3d at 760; Corbin, 1 S.W.3d at 747.  Conversely, if the condition at
issue constitutes a special defect, then the governmental unit owes the
claimant the same duty that a private person owes an invitee.  Payne,
838 S.W.2d at 237; Fontenot, 151 S.W.3d at 760-61; Corbin, 1
S.W.3d at 747.

          Thus, for an ordinary premise defect,
the governmental unit can be liable only if it has actual knowledge of the
condition at issue and the plaintiff did not.  Payne, 838 S.W.2d at 237;
Fontenot, 151 S.W.3d at 761; Corbin, 1 S.W.3d at 748.  For a
special defect, the governmental unit can be liable if it knew or should have
known of the condition.  Payne, 838 S.W.2d at 237; Fontenot, 151
S.W.3d at 761.  The plaintiff’s awareness of the existence of a special defect
is immaterial.  See Payne, 838 S.W.2d at 237; Fontenot, 151
S.W.3d at 761; Thompson v. City of Corsicana Housing Auth., 57 S.W.3d 547,
553 (Tex. App.—Waco 2001, no pet.).

          “Whether a condition is a premise
defect or a special defect is a question of duty involving statutory
interpretation and thus an issue of law for the court to decide.”  Payne,
838 S.W.2d at 238; Fontenot, 151 S.W.3d at 761; accord R.R. Street
& Co. v. Pilgrim Enters., Inc., 166 S.W.3d 232, 240 (Tex. 2005);
Corbin, 1 S.W.3d at 747.

Evidentiary Standard

          Stewart and Whitfield contend in their
second and third issues respectively that the court erred by: (1) failing to
accept as true all evidence favorable to them; and (2) making credibility
determinations in deciding the plea to the jurisdiction.

          In Texas Department of Parks
and Wildlife v. Miranda, the Supreme Court most recently explained the
appropriate evidentiary standard to be applied when a governmental unit files a
plea to the jurisdiction.  133 S.W.3d 217 (Tex. 2004).  “[T]his standard
generally mirrors that of a summary judgment.”  Id. at 228.  Thus:

·                   
the trial court must “construe
the pleadings liberally in favor of the plaintiffs and look to the pleaders’
intent”;

 

·                   
“in a case in which the jurisdictional
challenge implicates the merits of the plaintiffs’ cause of action and the plea
to the jurisdiction includes evidence, the trial court reviews the relevant
evidence to determine if a fact issue exists”;   

 

·                   
the trial court must “take
as true all evidence favorable to the [plaintiffs]” and “indulge every
reasonable inference and resolve any doubts in the [plaintiffs’] favor”;

 

·                   
“If the evidence creates a
fact question regarding the jurisdictional issue, then the trial court cannot
grant the plea to the jurisdiction, and the fact issue will be resolved by the
fact finder”;

 

·                   
“However, if the relevant
evidence is undisputed or fails to raise a fact question on the jurisdictional
issue, the trial court rules on the plea to the jurisdiction as a matter of
law.”

 

Id.
at 226-28.

          Because the applicable standards for a
plea to the jurisdiction are essentially the same as those for a summary
judgment motion with regard to how the trial court evaluates the evidence
presented, other principles of summary judgment practice are appropriate to
consider.  For example, “[t]he weight to be given a witness’s testimony is a
matter for the trier of fact, and a summary judgment cannot be based on an
attack of a witness’s credibility.”  Thompson, 57 S.W.3d at 556 (quoting
State v. Durham, 860 S.W.2d 63, 66 (Tex. 1993)).  “If the credibility of
the affiant or deponent is likely to be a dispositive factor in the resolution
of the case, then summary judgment is inappropriate.”  Alaniz v. Hoyt,
105 S.W.3d 330, 347 (Tex. App.—Corpus Christi 2003, no pet.) (quoting Casso
v. Brand, 776 S.W.2d 551, 558 (Tex. 1989)) Wilcox v. Marriott, 103
S.W.3d 469, 475 (Tex. App.—San Antonio 2003, pet. denied) (same).  Thus,
witness credibility “does not matter when the setting is one of summary judgment
for there the trial court cannot make credibility determinations.”  Tri-State
Chemicals, Inc. v. W. Organics, Inc., 83 S.W.3d 189, 198 (Tex.
App.—Amarillo 2002, pet. denied).  These principles apply with equal force to a
hearing on a plea to the jurisdiction.

          Stewart and Whitfield contend in their
second and third issues that the court erred by failing to accept as true all
evidence favorable to them and by judging the credibility of the witnesses.  We
agree.

          The trial court recited numerous “findings”
in which the court plainly did not accept as true all evidence favorable to the
plaintiffs or view the evidence in the light most favorable to them.  For
example, in Finding of Fact No. 4, the court found that “Stewart knew that the
Bunert Road Crossing could flood under the existing circumstances.”  However,
Stewart’s testimony directly contradicts this finding in several respects.  

          Stewart testified that:

·                   
he “did not know” that the
“crossing is in a low flood plain”

 

·                   
as far as he knows, that
crossing has not flooded at anytime in the last 22 years;

 

·                   
he knows that it has flooded
in Corsicana on “Business 45 mainly”;

 

·                   
he did not know that Post
Oak Creek is the body of water that causes this flooding on the business route
of Interstate 45:

 

·                   
he did not know that this is
the same creek which flows under Bunert Road at the crossing in question; and

 

·                   
he did not know that the
Bunert Road Crossing is a low-water crossing designed for water to flow over
during heavy rains.

 

          Based on the quoted portion of Finding
of Fact No. 4, the court apparently chose to disbelieve Stewart’s testimony on
the issue of actual knowledge.  In addition, the court expressly stated that it
did not find Rawlins’s testimony “persuasive or credible” insofar as it was
inconsistent with the court’s findings and conclusions.  Thus, the court failed
to “take as true all evidence favorable to the [plaintiffs]” and “indulge every
reasonable inference and resolve any doubts in the [plaintiffs’] favor.”  See
Miranda, 133 S.W.3d at 228.  By failing to do so, the court erred because
it applied an erroneous evidentiary standard in evaluating the evidence before
it.  Id. at 226-28.

          By evaluating the witnesses’
credibility, the court likewise erred.  See Durham, 860 S.W.2d at 66; Casso,
776 S.W.2d at 558; Alaniz, 105 S.W.3d at 347; Wilcox, 103 S.W.3d at
475; Tri-State Chemicals, 83 S.W.3d at 198; Thompson, 57 S.W.3d at
556; see also Miranda, 133 S.W.3d at 226-28.

          The court’s errors as identified in the
discussion regarding Stewart’s and Whitfield’s second and third issues will not
require reversal unless the errors probably caused the rendition of an improper
judgment.  See Tex. R. App. P. 44.1(a)(1). 
Because we will conclude that the evidence raises a fact question on the issue
of whether the City or Stewart had actual knowledge at the relevant time, these
errors did cause the rendition of an improper judgment.  Accordingly, we
sustain Stewart’s and Whitfield’s second, third, and fourth issues.




The City’s Knowledge[4]

          Stewart and Whitfield contend in their
sixth issue that the court erred by granting the City’s plea to the
jurisdiction because a fact question remains regarding whether the City had
actual knowledge of the dangerous condition.[5]

          Actual knowledge may be established by
circumstantial evidence.  See City of San Antonio v. Rodriguez, 931
S.W.2d 535, 537 (Tex. 1996) (per curiam); Palais Royal, Inc. v. Gunnels,
976 S.W.2d 837, 844 (Tex. App.—Houston [1st Dist.] 1998, pet. dism’d by agr.);
Simons v. City of Austin, 921 S.W.3d 524, 528 n.2 (Tex. App.—Austin 1996,
writ denied); see also Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778,
785 (Tex. 2001) (“actual awareness” element of gross negligence claim
may be proved by circumstantial evidence); LaRue v. Chief Oil & Gas,
L.L.C., 167 S.W.3d 866, 879 (Tex. App.—Fort Worth 2005, no pet.) (same).

          Here, public works director Lynch
testified that the City did not have notice that the Bunert Road crossing was
flooded until Stewart called 9-1-1.  However, Lynch also testified that the
crossing had “sometimes” flooded in the past during heavy rains, that this
crossing was designed so that the water would flow over it during heavy rains,
and that the City had closed the low-water crossing several times before
because of flooding.

          The National Weather Service had issued
at least four pertinent notices on the afternoon and night preceding the accident. 
Rawlins, who was a former member of the City Council, testified that the City
knew prior to the accident that the crossing “tended to flood during heavy rains.” 
The court also admitted in evidence Rawlins’s affidavit, in which she stated
that Corsicana “public officials were on notice prior to May 1, 2004 of the
dangerous conditions the Bunert Road low-water crossing over Post Oak Creek
posed during light and heavy rains.”

          In post-hearing briefing, Stewart and
Whitfield also provided the court with a copy of a 2001 Flood Protection
Planning Study prepared for the City of Corsicana.  Among other things, this
study states, “The City of Corsicana has a history of flood problems and
damages within the Post Oak Creek drainage basin.”  The study highlights the Bunert Road crossing as one of the problem areas.

          TxDOT had closed a portion of the
business route for Interstate 45, which is upstream from the Bunert Road crossing, because of flooding on the night of the accident.  At least one of the
police officers who responded to Stewart’s call had just assisted another
officer in apprehending a murder suspect.  Thus, it could be inferred that
these officers were patrolling the streets of Corsicana that night and knew of
the heavy rainfall.

          When we “indulge every reasonable
inference and resolve any doubts in [Stewart’s and Whitfield’s] favor,” we must
conclude that a fact question remains regarding whether the City had actual
knowledge of the dangerous condition.  See Rodriguez, 931 S.W.2d at 537
(rejecting no-evidence complaint because “[d]epending on the position of the
leaks above the floor and the amount of rain, the jury might have inferred that
the person in charge knew that there would be water on the floor”); Palais
Royal, 976 S.W.2d at 844 (“Palais Royal actually knew that the ladder was
shortened and that visibility at the top of the ladder was obscured by the ‘drop’
ceiling which Palais Royal insisted on lowering.  These facts, albeit
circumstantial, constitute some evidence that Palais Royal knew the ladder was
dangerous.”); Simons, 921 S.W.2d at 528 & n.2 (testimony of two
experts who testified that partition was dangerous and city “must have known”
of the danger constitutes circumstantial evidence of city’s actual knowledge).

          Accordingly, we sustain Stewart’s and
Whitfield’s sixth issue.

Stewart’s Knowledge

          Stewart and Whitfield contend in their
fifth issue that the trial court erroneously applied a constructive knowledge
standard in assessing Stewart’s knowledge of the dangerous condition.

          The court found that Stewart
“regularly drove over the Bunert Road Crossing”; that “[h]e was aware that the
Bunert Road Crossing was in a low area and subject to flooding; and that he
“knew that the Bunert Road Crossing could flood under the existing
weather conditions.” (emphasis added)  However, these findings directly
contradict Stewart’s testimony.

          The court’s finding does appear to resemble
a finding of constructive rather than actual knowledge.  Cf. CMH Homes, Inc.
v. Daenen, 15 S.W.3d 97, 102 (Tex. 2000) (premises owner may be liable to
invitee for dangerous condition if owner “should have known that a
condition on its premises created an unreasonable risk of harm”) (emphasis
added).  More importantly however, and as addressed in connection with several
of Stewart’s and Whitfield’s other issues, the court applied the wrong
evidentiary standard to Stewart’s testimony.

          When we “indulge every reasonable
inference and resolve any doubts in [Stewart’s and Whitfield’s] favor,” we must
conclude that a fact question remains regarding whether Stewart had actual
knowledge of the dangerous condition.  See Palais Royal, 976 S.W.2d at
844.  Thus, we sustain Stewart’s and Whitfield’s fifth issue.

Plea to the Jurisdiction

          Stewart and Whitfield contend in their
first issue that the court erred by granting the City’s plea to the
jurisdiction because fact questions remain on the issues of the City’s and
Stewart’s knowledge.  They contend in their fourth issue that the court
erroneously ruled on the merits of their claims in deciding the plea to the
jurisdiction.

          As previously observed, when a plea to
the jurisdiction “implicates the merits of the plaintiffs’ cause of action and
the plea to the jurisdiction includes evidence, the trial court reviews the
relevant evidence to determine if a fact issue exists.”  Miranda, 133
S.W.3d at 227.  The court may adjudicate the merits of the claim at this stage
only “if the relevant evidence is undisputed or fails to raise a fact question
on the jurisdictional issue.”  Id. at 228.

          Because fact questions remain on the
issues of the City’s and Stewart’s knowledge, the court erred by deciding the
merits of their claims and granting the plea to the jurisdiction.  See
Miranda, 133 S.W.3d at 227-28.  Accordingly, we sustain Stewart’s and
Whitfield’s first and fourth issues.

We reverse the order granting the City’s plea to
the jurisdiction and remand this cause to the trial court for further proceedings
consistent with this opinion.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray dissenting with note)*

Reversed and remanded

Opinion delivered and
filed December 6, 2006

[CV06]

 

*        (Dissenting
note: “Chief Justice Gray notes that there are many statements in the majority
opinion with which he does not agree, statements that ultimately lead the
majority to an erroneous judgment.  He therefore dissents from both the opinion
and the judgment.  But a separate opinion will not be issued.”)









[1]
          Based on the time of Stewart’s
call to 9-1-1, the accident which serves as the basis for the suit occurred
around 1:30 a.m.

 





[2]
          The court issued findings of
fact and conclusions of law contemporaneously with its order granting the
City’s plea to the jurisdiction, on February 3, 2006.  Stewart and Whitfield
filed their notice of appeal on February 15.  The City filed a Request for
Findings of Fact and Conclusions of Law on February 23.  The court signed the
City’s proposed Findings of Fact and Conclusions of Law on March 8.





[3]
          Because of a 2005 amendment, a
governmental unit owes a person using a toll road the duty owed a licensee,
even though the person paid for the use of the road.  See Tex. Civ. Prac. & Rem. Code Ann. § 101.022(c)
(Vernon Supp. 2006).  For other persons who pay for the use of government-owned
premises, a governmental unit owes the duty owed an invitee.  Thompson v.
City of Corsicana Housing Auth., 57 S.W.3d 547, 552 (Tex. App.—Waco 2001,
no pet.).





[4]
          Stewart and Whitfield do not
challenge the court’s conclusion that the condition was not a special defect. 
The court’s conclusion in this regard is supported by numerous authorities.  See,
e.g., State Dep’t of Highways & Pub. Transp. v. Kitchen, 867 S.W.2d 784,
786 (Tex. 1993) (per curiam); Tex. Dep’t of Transp. v. Fontenot, 151
S.W.3d 753, 761-62 (Tex. App.—Beaumont 2004, pet. denied); Corbin v. City of
Keller, 1 S.W.3d 743, 747-48 (Tex. App.—Fort Worth 1999, pet. denied); but
cf. Tex. Dep’t of Transp. v. Abilez, 962 S.W.2d 246, 251 (Tex. App.—Waco 1998,
pet. denied) (TxDOT conceded that flooded highway constituted special defect).

 





[5]
          The dangerous condition at issue
is the flooded road, not the low-water crossing itself.  See Tex. Dep’t of
Transp. v. Ramirez, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam) (quoting State
v. Rodriguez, 985 S.W.2d 83, 85 (Tex. 1999) (per curiam)) (“the ‘[d]esign
of any public work, such as a roadway, is a discretionary function involving
many policy decisions, and the governmental entity responsible may not be sued
for such decisions’”); see also Tex.
Civ. Prac. & Rem. Code Ann. § 101.056(2) (Vernon 2005).