

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-06-196-CV

ARNOLDO DOMINGUEZ, INDIVIDUALLY,
AND AS HEIR OF THE ESTATE OF
MIRNA DOMINGUEZ, DECEASED;
MARIA DOMINGUEZ, INDIVIDUALLY,
AND AS HEIR OF THE ESTATE OF
MIRNA DOMINGUEZ, DECEASED;
FERMIN VITOLAS, INDIVIDUALLY,
AND AS HEIR OF THE ESTATE OF
FERNANDO FERMIN VITOLAS, DECEASED;
EMILIA OLIVIA CARRILLO DE VITOLAS,
INDIVIDUALLY, AND AS HEIR OF THE ESTATE
OF FERNANDO FERMIN VITOLAS, DECEASED

APPELLANTS

V.

THE CITY OF FORT WORTH, TEXAS

APPELLEE

------------

FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

---

[1]*See* TEX. R. APP. P. 47.4.

This is an interlocutory appeal from the trial court's order granting the City of Fort Worth, Texas's (hereinafter the "City") plea to the jurisdiction. We reverse.

On or about June 1, 2004, at approximately 8:15 p.m., Fernando Fermin Vitolas, along with his passenger, Mirna Dominguez (hereinafter collectively "Decedents"), were traveling west on NE 28th Street in Fort Worth, Texas, in a 1992 Geo Metro. Decedents were on their way to meet Fernando's mother, appellant Emilia Olivia Carrillo de Vitolas, on Decatur Avenue in Fort Worth, where she was departing on a bus trip to Mexico. There were severe thunderstorms in the Fort Worth area at the time.

At the intersection of NE 28th Street and Decatur Avenue, the police were redirecting traffic because Decatur Avenue was beginning to flood due to the heavy rains. Fernando turned his vehicle around and headed back east on NE 28th Street. Fernando then made a left turn onto Schwartz Avenue and another left turn onto Vera Cruz Street, where he successfully traversed a flooded low water crossing equipped with a sign stating, "Warning Watch For Flash Flooding." He continued on until he turned on Schadt Street, only to discover that it was a dead end road.

Fernando turned the car around and made a right turn back onto Vera Cruz Street where he came upon another flooded low water crossing marked

by a sign stating, "Warning Watch For Flash Flooding." This was not a thru street, however, and Fernando found that the other end of the low water crossing terminated in a grassy area with no visible roadway.

Before attempting to drive across this flooded low water crossing a second time, Fernando decided to wait for the water to subside.[2] After waiting approximately 20-25 minutes, Fernando exited his car to inspect the water level. A water depth indicator that had been placed by the City at this crossing was missing. Fernando then attempted to drive across the flooded crossing. The decedents were swept away and drowned during the attempt.

On October 6, 2005, appellants filed suit against the City under Sections 101.021(2), 101.022(b), and 101.060(a)(2) of the Texas Tort Claims Act (the "Act"), alleging that the decedents' deaths were caused by the missing flood depth gauge and that the City failed to replace the missing gauge within a reasonable time after notice that the gauge was missing.

On April 25, 2006, the City filed a plea to the jurisdiction based upon governmental immunity. After a hearing, the trial court granted the City's plea to the jurisdiction and dismissed the suit.

---

[2]According to appellants, Fernando had some difficulty traversing the crossing the first time due to the high water.

3

In four issues, appellants contend that 1) the decedents' knowledge of the flooding is not a bar to recovery because the applicable standard of care is that of a landowner to an invitee; 2) the City did not warn of the absence of the missing water depth gauge or the severity of the hazard posed by the flooding; 3) the affidavit they submitted in support of their response to the City's plea to the jurisdiction is legally sufficient; and, 4) a genuine issue of material fact exists as to whether the absence of the water depth gauge caused the decedents' deaths.

Generally, a governmental unit[3] enjoys sovereign immunity from suit and may be sued only if liability arises under the Act.[4] If a plaintiff fails to prove the existence and violation of a legal duty sufficient to impose liability under the Act, sovereign immunity remains intact.[5]

Under the Act, a governmental unit has liability for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant

---

[3]A "governmental unit" includes political subdivisions of the state such as cities. TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B) (Vernon 2005).

[4]*See id.* § 101.025 (Vernon 2005).

[5]*See City of Denton v. Page*, 701 S.W.2d 831, 834 (Tex. 1986).

4

according to Texas law."[6]    To state an actionable claim under section 101.021(2) based upon the condition, use, or misuse of property, personal injury or death must be proximately caused by the condition or use of the property.[7]

In cases where the claim arises from a premises defect involving real property, section 101.022(a) of the Act limits the governmental unit's liability to that which a private person would owe to a licensee on private property.[8] Under section 101.022(b), however, this limitation of duty does not apply to the duty to warn of special defects, or to "the duty to warn of the absence, conditions, or malfunction of traffic signs, signals, or warning devices as is required by section 101.060."[9]   The relevant provisions of section 101.060 exclude liability for claims involving injuries caused by the absence, condition, or malfunction of a traffic or road sign, signal or warning devices "unless the absence, condition or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice."[10]

---

[6] TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (Vernon 2005).

[7] *Id.*

[8] *Id.* § 101.022(a) (Vernon 2005 & Supp. 2007).

[9] *Id.* § 101.022(b).

[10] *Id.* § 101.060(a)(2) (Vernon 2005).

Appellants contend that decedents' knowledge that the bridge was flooded does not bar their recovery under section 101.060 of the Act. We agree. By its own terms, the limitation of duty in section 101.022 applicable to premises defects does not apply to section 101.060: "The limitation of duty in this section does not apply to the duty to warn of the . . . absence . . . of . . . warning devices . . . as is required by section 101.060."[11] Section 101.060(a)(2) conditions liability on whether the absence, condition, or malfunction of a traffic or road sign, signal, or warning device is corrected by the governmental unit within a reasonable time after notice.[12] Consequently, the City's liability in this case is dependent, in part, on whether the missing water depth gauge was corrected within a reasonable time after notice, not on whether decedents knew the bridge was flooded.[13]

---

[11]*Id.* § 101.022(b).

[12]*Id.* § 101.060(a)(2).

[13]*See City of Baytown v. Peoples*, 9 S.W.3d 391, 396–97 (Tex. App.—Houston [14th Dist.] 1999, no pet). The facts in *Corbin v. City of Keller*, 1 S.W.3d 743 (Tex. App.—Fort Worth 1999, pet. denied), are distinguishable. In *Corbin*, the appellants asserted a claim under section 101.022, alleging that the flooding at a low-water crossing was a special defect of which the City of Keller failed to warn, or to take steps to make safe. *Id.* at 746–48. Here, appellants' claim is brought under section 101.060, based on the alleged failure of the City to warn of a missing water depth gauge and to replace the gauge within a reasonable time after notice. Appellants in this case do not contend that the flood waters were a special defect.

6

Appellants allege in their pleadings that the water depth gauge where the incident in question occurred had been missing for two years prior to the incident, and that the City had notice that the gauge was missing prior to the incident but failed to replace the gauge within a reasonable time after notice. The City does not challenge these jurisdictional allegations. Instead, the City argues that it satisfied its duty under section 101.060 by warning the decedents "of the flood waters." This warning, however, is immaterial to the appellants' claim under section 101.060(a)(2) that the City failed to timely replace the water depth gauge or to warn of its absence.

In the alternative, the City asserts that the missing water depth gauge was not the proximate cause of the decedents' deaths. In support of this assertion, the City submitted the affidavit of an eyewitness, Bobby Miller. According to Miller, the level of the water flowing over the bridge "stayed approximately the same" between the time of the decedents' first successful crossing of the bridge and their attempted second crossing. The City contends that this affidavit testimony proves that the missing gauge was not the proximate cause of the accident because the decedents knew the depth of the water during their attempted second crossing.

Contrary to the City's interpretation of Miller's affidavit, we conclude that the affidavit raises a genuine issue of fact as to whether the water level

7

increased between the decedents' two crossings and, thus, whether the absence of the water gauge proximately caused their deaths. The Miller affidavit establishes that there was a "severe thunderstorm along with heavy rain" before the decedents attempted the second crossing; that "the [decedents'] vehicle's headlights were turned off at that time"; and that Miller's "power had gone out because of the storm." The affidavit does not establish the depth of the water during either crossing.

Proximate cause is usually a question of fact unless the evidence is undisputed and only one reasonable inference may be drawn.[14] Because the jurisdictional facts challenged by Miller's affidavit are disputed, and because the affidavit does not conclusively establish the depth of the water when the decedents crossed the bridge, we hold that the trial court could not grant the City's plea to the jurisdiction on the ground that the decedents' deaths were not proximately caused by the missing gauge as a matter of law.[15]

Finally, the City contends for the first time on appeal that it is immune from suit under Section 101.055(2), which is referred to as the "emergency

---

[14]*See Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 266 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

[15]*See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004).

8

response doctrine," based on City police officers' diversion of decedents from Decatur Avenue due to flooding.[16] This provision states that the Act "does not apply to a claim arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action . . . ."[17] The City contends that "[w]hile Appellants do not list the diversion as a formal cause of action, they intimate that the diversion did in fact cause [the decedents] to lose their way and end up at the intersection of Schadt and Vera Cruz Streets, where they drowned." There is, however, nothing in appellants' pleadings that suggests that the decedents' deaths were caused by the actions of City police officers. To the contrary, appellants assert in their brief on appeal that the police officers "did not cause decedents to cross the bridge that they were swept off of." We, therefore, hold that the emergency response doctrine is inapplicable to this case.

In conclusion, appellants have alleged facts in their pleadings that affirmatively demonstrate the trial court's jurisdiction to hear appellants' cause

---

[16]*See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(2) (Vernon 2005). Generally, a challenge to subject matter jurisdiction may be raised at any time. *See Gorman v. Life Ins. Co. of N. Amer.*, 811 S.W.2d 542, 547 (Tex.), *cert. denied*, 502 U.S. 824 (1991).

[17] EX. CIV. PRAC. & REM. CODE ANN. § 101.055(2).

9

under section 101.060 of the Act, and the evidence submitted by the City on the issue of proximate cause creates a fact question that defeats the City's plea to the jurisdiction.[18]  Therefore, the judgment of the trial court is reversed and the cause is remanded to the trial court for further proceedings.


JOHN CAYCE
CHIEF JUSTICE


PANEL A:  CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DELIVERED:  March 6, 2008

---

[18]*Miranda*, 133 S.W.3d at 227–28.  Having sustained appellants' first, second, and fourth issues to reach this conclusion, it is unnecessary for us to reach appellants' third issue challenging the legal sufficiency of Miller's affidavit.  *See* TEX. R. APP. P. 47.1.